**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-23874-CIV-LENARD/ELFENBEIN

**RAV BAHAMAS, Ltd.,**
**a Bahamian Corporation,**

      Plaintiff,

v.

**GENTING AMERICAS, Inc.,**
**a Delaware Corporation,**

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND REQUIRING AMENDED COMPLAINT

**THIS CAUSE** is before the Court on Defendant Genting Americas, Inc. ("Genting") Motion to Dismiss (D.E. 16). Plaintiff Rav Bahamas, Ltd. ("RAV") filed a Response (D.E. 28), to which Genting filed a Reply (D.E. 37). The Court subsequently granted leave for RAV to file a Sur-Reply (D.E. 56) and for Genting to file a Response to Sur-Reply (D.E. 58). Having considered the Parties' written submissions, the record, and the applicable law, the Court finds as follows.

## I.    Background[1]

This case concerns a business relationship gone wrong. RAV partnered with Genting to develop and operate a casino resort in the Bahamas. (D.E. 1 at 1–3). Genting,

---

[1] The following facts are gleaned from RAV's Complaint (D.E. 1) and are deemed to be true for purposes of ruling on Genting's Motion to Dismiss.

a Delaware corporation and worldwide resort operator with its "Resorts World" branded properties, "convinced RAV that, together, they could build a world-class resort and casino in Bimini, which would yield significant returns for RAV[.]" (*Id*. at 2). RAV, a Bahamian corporation and large landowner on the island of Bimini, sought Genting's resources and expertise and contributed the 20 acres on which the resort sits. (*Id*.). RAV and Genting ultimately created a company, BB Entertainment Ltd. ("BBE"), a Bahamian company, "to develop, own, and operate what would eventually be Resorts World Bimini." (*Id*. at 2). BBE's ownership was initially split 50/50. (*Id*. ¶ 20). However, Genting later assigned its ownership interest to BB Investment Holdings, Ltd. ("BBIH"), a Bahamian entity. (*Id*. ¶ 22). Genting maintained control over BBIH, and "[a]s of December 31, 2015, RAV's share in BBE had been diluted to 22% and BBIH's share increased to 78%." (*Id*. ¶¶ 24–27).

To RAV's dismay, Resorts World Bimini has been a financial failure. BBE has not distributed any profits to RAV and the venture has racked up nearly a billion dollars in debt. (*Id*. at 3). RAV alleges the debt is illegitimate—and Genting is responsible—as it has deliberately "used BBE as its financial wasteland." (*Id*.). RAV claims that Genting's fraudulent accounting practices have drowned BBE in illegitimate debt to diminish the value of RAV's shares. (*Id*.). In sum, RAV alleges Genting schemed to steal its land such that "if and when the BBE Resort is sold, RAV would never realize any money from that sale, and would never receive any money for the land and licenses it contributed." (*Id.* at 32–33).

On October 7, 2024, RAV filed its operative Complaint invoking this Court's diversity jurisdiction under "28 U.S.C. § 1332 as the matter in controversy exceeds the

jurisdictional limits and is between RAV, a citizen of the Bahamas, and Genting Americas, a Delaware corporation with a principal place of business in New York." (*Id.* ¶ 2). The Complaint alleges the following counts:

- Count I: "Fraud" based on Genting recording "illegitimate expenses and debt onto BBE's books and accounting records, which did not belong to BBE." (*Id.* ¶¶ 140– 54).

- Count II: "Constructive Fraud" based on Genting's breach of its fiduciary duty to BBE and its shareholders, including RAV, by taking "unconscionable advantage of RAV's trust and confidence when it artificially increased BBE's liabilities[.]" (*Id.* ¶¶ 155–64).

- Count III: "Conspiracy to Defraud" based on Genting conspiring with other persons and entities in the Genting Group to "artificially increase BBE's liabilities." (*Id.* ¶¶ 165–72).

- Count IV: "Tortious Interference with an Advantageous Business Relationship" based on Genting's interference with advantageous business relationships between RAV and BBE's officers and directors. (*Id.* ¶¶ 173–82).

- Count V: "Negligence" based on Genting's breach of its duty to maintain BBE's financial and accounting records in an accurate and commercially reasonable manner. (*Id.* ¶¶ 183–89).

Genting responded by filing its Motion to Dismiss asserting BBIH, a Bahamian entity, is an indispensable party under Federal Rule of Civil Procedure 19 whose joinder

would destroy diversity jurisdiction.[2]  (D.E. 16 at 19–23).  In its Response, RAV asserts BBIH is neither a necessary nor indispensable party because the Complaint does not implicate BBIH's interests or allege any misconduct by BBIH.  (D.E. 28 at 6–9).  In its Reply, Genting—surprised at RAV's renouncement of any claim against BBIH—contends that a different indispensable party problem is created as RAV's claims are derivative of the harm caused to BBE.  (D.E. 37 at 5).  Genting thus asserts that RAV's claims must be brought in a derivative shareholder action with BBE joined as a nominal defendant— defeating diversity jurisdiction as both RAV and BBE are Bahamian citizens.  (*Id.* at 10). In its Sur-Reply, RAV argues that its claims against Genting are properly categorized as direct shareholder claims under Bahamian and Florida law, but "if the Court concludes that RAV should bring its claims derivatively, subject-matter-jurisdiction issues would be addressed under a later 'realignment' analysis.  And before that happens, RAV should be granted leave to amend."  (D.E. 56 at 8).  Finally, in its Response to Sur-Reply, Genting contends that RAV's theory of wrongdoing centers on harm to BBE, and it cannot run from the gravamen of its Complaint to preserve diversity jurisdiction.  (D.E. 58 at 3).

## II.    Legal Standards

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim" showing that the pleader is entitled to relief.  Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim that violates Rule 8(a) for "failure to state a claim upon which relief can be granted[.]"  "To survive a motion to

---

[2] Genting raises other arguments the Court does not reach.  Because RAV is being granted an opportunity to amend, Genting's additional arguments shall be denied without prejudice.

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   Discussion

### a.   Direct vs. Derivative Analysis

The Court must decide whether RAV may maintain a direct action against Genting—or if its claims must be pursued derivatively on behalf of BBE. As BBE is a Bahamian company, Bahamian law applies. *See Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1133 (11th Cir. 2020) ("[A] court [must] look to the law of the state or place of incorporation to answer the 'direct vs. derivative' question[.]"). However, the Parties stipulate to the Court applying Florida law as there is no conflict between Florida and Bahamian law regarding direct vs. derivative shareholder actions. (*See* D.E. 56 at 4; D.E. 58 at 6). The Court accepts the stipulation and shall apply Florida law. *See Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1252 (S.D. Fla. 2008) (Gold, J.), aff'd, 329 F. App'x 257 (11th Cir. 2009) (applying Florida law where there was no apparent conflict between Florida and foreign law). Under Florida law, an action may be brought directly only if:

>  (1) there is a **direct harm** to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and**

(2) there is a **special injury** to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members.

*Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 739–40 (Fla. 3d DCA 2014) (emphasis added).[3]

### 1.    Direct Harm

As to direct harm, all five counts of RAV's Complaint allege that Genting caused illegitimate expenses and debt to be recorded on BBE's books.  (D.E. 1 ¶¶ 141, 159, 167, 177, 186).  Specifically, RAV alleges that Genting

> knew that by shifting illegitimate expenses and debt onto BBE's books, BBE would not be able to pay down its legitimate debt and expenses, which in turn required BBE to obtain additional loans to operate and thereby increased its interest expense.  Genting also knew that this conduct would artificially increase BBE's losses and liabilities which in turn would diminish the value of RAV's shares in BBE.

(*Id.* ¶ 146).

The Court must look to "the nature of the claims raised in the complaint" rather than "the label given by the plaintiff."  *Freedman*, 963 F.3d at 1136; *see also Weir v. Stagg*, No. 09-21745-CIV, 2011 WL 13174531, at *9 (S.D. Fla. Feb. 7, 2011) (Seitz, J.) ("If the gravamen of the complaint is injury primarily to the corporation or the shareholders generally, then the cause of action belongs to the corporation, and the shareholders' right to pursue the action derives from the corporation." (citations omitted)).  Here, the Complaint's core allegation is that Genting engaged in self-dealing and financial misconduct by burdening BBE with illegitimate or excessive debt, thereby depleting the

---

[3] The Parties agree that *Dinuro* is the controlling authority (*see* D.E. 56 at 4; D.E. 58 at 6) and the Eleventh Circuit has expressly recognized the same.  *See Freedman*, 963 F.3d at 1136.

value of the company's primary asset—land originally contributed by RAV.  While RAV may perceive this as a personal injury stemming from the loss of the value of its land, the land was contributed to BBE and thus became a company asset.  Any diminution in value resulting from mismanagement or fraudulent encumbrances harms BBE directly and RAV only derivatively, in its capacity as a shareholder.  Because RAV's alleged injury flows from the initial harm to BBE, RAV fails to establish "direct harm" under the *Dinuro* framework.

In its Sur-Reply, RAV attempts to recast its allegations asserting it "is unequivocally the only victim in this case because the illegitimate debt effectively wipes out RAV's entire contribution, while not harming BBE and benefitting BBIH."  (D.E. 56 at 2).  Specifically, RAV argues that "the illegitimate debt placed on BBE's books is not a harm to BBE" as it is "payable only upon BBE's death" and "only one shareholder, RAV, feels the illegitimate debt's harm because the other shareholder, BBIH, stands to collect 90% of that debt."  (D.E. 56 at 6).  The Court, however, finds that RAV may not rewrite its Complaint in a Sur-Reply.  As discussed, all five counts of RAV's Complaint allege wrongful conduct resulting in increased debt to BBE.  To say the debt did not harm BBE is nonsensical.  Debt that a company wrongfully incurs—and cannot pay off—harms the company while it is alive, and insolvency or dissolution is a materialization of that harm.  In sum, the Court finds RAV's Sur-Reply argument unavailing.

### 2.    Special Injury

As to special injury, RAV has not identified any special duty that Genting owed specifically to RAV, distinct from the general obligations owed to BBE or to its

shareholders collectively.  Nor has RAV alleged a contractual or fiduciary relationship between RAV and Genting that would support a direct claim for misappropriation or fraud targeting RAV alone.  Absent such allegations, Florida law does not permit RAV to bypass the procedural safeguards of a derivative action.  *See Dinuro*, 141 So. 3d at 739–40.

RAV contends it suffered a "special injury" because it contributed land and now claims to have lost the value of that contribution.  But RAV cites no authority for the notion that the form of a shareholder's capital contribution—whether cash, services, or property—transforms a generalized corporate injury into a personal one.  To the contrary, the Court finds that the type of asset contributed does not alter the nature of the alleged harm.  Once the contribution is made, the assert belongs to the corporation.  Any subsequent misuse or devaluation of that assert is a direct harm to the corporation, and an indirect harm to the contributing shareholder.  *See id.*; *see also Medkser v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008) (no direct action where shareholders alleged injury from loss of investment due to corporate wrongdoing as these claims are "indistinguishable from the myriad claims of self-dealing and mismanagement that courts have held may only be brought as derivative claims.").

A loss in value of contributed land is economically indistinguishable from a loss in the value of contributed cash or other asserts.  In both cases, the shareholder's alleged harm arises solely from the reduced value of their equity interest—an injury shared equally by all shareholders when the corporation is mismanaged.  Allowing a shareholder to pursue direct claims based on the form of the contributed assert would undermine the direct/derivative distinction and open the door to individualized direct claims cloaked in

8

corporate loss.  This is precisely the kind of individualized recovery that *Dinuro* forbids.
As such, the injury here is not "separate and distinct," but rather derivative of BBE's
alleged injury and must be pursued, if at all, on BBE's behalf.  *See Chrystall v. Serden
Techs.*, 913 F. Supp. 2d 1341, 1362 (S.D. Fla. 2012) (Rosenbaum, J.) (finding that
company-wide monetary harms, such as devaluation of stock or damages resulting from a
sale of assets at an unreasonable price, are injuries to the corporation and must be asserted
derivatively).  RAV thus fails to demonstrate a "special injury" under the *Dinuro*
framework.

Moreover, the relief sought—monetary damages and unwinding of improper
indebtedness—would redound to the benefit of BBE, not solely or uniquely to RAV.  *See
Culverhouse v. Paulson & Co. Inc.*, 791 F.3d 1278, 1280 (11th Cir. 2015) ("Any recovery
obtained in a derivative suit 'must go to the corporation,' while any recovery in a direct
action 'flows directly to the stockholders, not to the corporation.'").  Any increase in
company value or asset restoration resulting from a favorable judgment would accrue to
all shareholders, not just to RAV.  *See id.*  This further confirms the derivative nature of
the claims.

### b.    Joinder of BBE

Having determined that RAV's claims are derivative in nature, BBE must be joined
as an indispensable party.  *See* Fed. R. Civ. P. 23.1; *Ross v. Bernhard*, 396 U.S. 531, 538
(1970) ("The corporation is a necessary party to [a derivative] action; without it the case
cannot proceed.  Although named a defendant, it is the real party in interest, the stockholder
being at best the nominal plaintiff.").  Genting contends that BBE cannot be joined without

destroying complete diversity, thereby depriving the Court of subject matter jurisdiction under 28 U.S.C. § 1332.  (D.E. 58 at 8).  In brief, Genting argues that BBE and RAV's interests are adverse, pointing out that the challenged transactions were authorized by BBE's own directors whom RAV alleges acted improperly.  (*Id.*).  As such, Genting claims that any realignment analysis would be futile because BBE would inevitably oppose this suit and be aligned as a defendant, thereby destroying diversity as both BBE and RAV are Bahamian citizens.  (*Id.*).  RAV asserts that, if the Court determines its claims must be brought derivatively, it should be granted leave to amend the Complaint accordingly.  (D.E. 56 at 8).  RAV also contends that, if BBE is joined, it would initially be added as a nominal defendant for purposes of satisfying the procedural requirements of a derivative action under Rule 23.1, and then any jurisdictional questions should be resolved after a realignment analysis, when BBE's actual interests are clear.[4]  (*Id.*).  RAV further suggests that federal question jurisdiction may exist depending on the amended allegations, although no such theory is currently pled.  (*Id.*).

RAV has not yet amended its Complaint.  Ordinarily, a party must be given at least one opportunity to amend before a district court dismisses a complaint.  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).  Additionally, Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend be freely given when justice so requires.  As

---

[4]In a derivative suit, "as a practical matter, the corporation is initially named as a defendant.  In this way the stockholder insures the presence of the corporation as an indispensable party.  Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests."  *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983).

such, RAV shall be granted one opportunity to properly frame its claims and pursue appropriate legal remedies.

At this juncture, the Court need not resolve issues concerning realignment and jurisdiction.  Those questions may become ripe after RAV amends and the Parties' respective positions are clarified.  The Court agrees, however, that RAV must proceed derivatively and that BBE must be joined.  Accordingly, the Court will grant RAV one opportunity to amend the Complaint to conform with Rule 23.1 and to address any jurisdictional consequences of joinder.  The Court expresses no view at this time on whether jurisdiction will ultimately be preserved following amendment.

## IV.    Conclusion

For the reasons stated above, the Court finds that RAV's claims are derivative in nature and must be brought on behalf of BBE.  Because BBE is an indispensable party, and RAV has not yet brought this action derivatively or joined BBE, the current Complaint cannot proceed.

Accordingly, it is **ORDERED AND ADJUDGED** that Genting's Motion to Dismiss (D.E. 16) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order; RAV's Complaint (D.E. 1) is **DISMISSED WITHOUT PREJUDICE**; and RAV is granted leave to file an Amended Complaint consistent with this Order.  The Amended Complaint shall be filed within **21 days** of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 1st day of July, 2025.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**