## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-23874-LENARD/Elfenbein

**RAV BAHAMAS, LTD.,**

      Plaintiff,

v.

**GENTING AMERICAS, INC.,**

      Defendant.

_____/

## <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court on: (1) Plaintiff Rav Bahamas, Ltd.'s ("Plaintiff") Amended Motion to File Exhibits to the Amended Complaint Under Seal (the "First Motion to Seal"), ECF No. [86]; and (2) Defendant Genting Americas Inc.'s ("Genting") Motion to File the Motion for Leave to Amend and Exhibits to the Proposed Second Amended Complaint Under Seal (the "Second Motion to Seal"), ECF No. [127].  The Honorable Joan A. Lenard referred the First Motion to Seal "and all related motions and pleadings" to me "to hear and determine" the issues therein.  ECF No. [91]; *see also* ECF No. [144].  Judge Lenard likewise referred Plaintiff's Motion for Leave to Amend the First Amended Complaint (the "Motion to Amend"), ECF No. [125], together with "all related motions and pleadings," to the undersigned "to hear and determine" the issues presented therein.  *See* ECF No. [144].  The Second Motion to Seal is "related" to both referrals as it concerns the sealing of exhibits and redactions submitted in connection with the Motion to Amend, and it substantially overlaps with the First Motion to Seal, which encompasses the majority of the same exhibits and raises the same confidentiality and notice issues under the Protective Order.

Having reviewed the Motions, the responses thereto, and the record in this case, the First Motion to Seal, **ECF No. [86]**, is **GRANTED in part and DENIED in part** and the Second Motion to Seal, **ECF No. [127]**, is **GRANTED in part and DENIED in part**.

## I.     INTRODUCTION

This case arises from a failed joint venture to develop and operate a casino resort in Bimini, Bahamas. *See* ECF No. [85] at 1-3. Plaintiff, a Bahamian corporation and major landowner in Bimini, partnered with Genting — a Delaware corporation that operates "Resorts World" branded properties — after Genting "convinced [Plaintiff] that, together, they could build a world-class resort and casino in Bimini, which would yield significant returns for [Plaintiff.]" *See id.* at 2. Plaintiff contributed the roughly 20 acres on which the resort sits, and the Parties formed BB Entertainment Ltd. ("BBE") to develop, own, and operate what became Resorts World Bimini. *See id.* at 1-2. Plaintiff alleges the project has been a financial failure with no profit distributions and nearly $1 billion in illegitimate debt caused by Genting's fraudulent accounting and self-dealing. *See id.* at 2-3. In Plaintiff's telling, Genting used BBE as a "financial wasteland" to saddle it with improper debt, depressing the value of Plaintiff's shares. *See id.*

## II.     BACKGROUND

On October 7, 2024, Plaintiff filed the initial Complaint originally only naming Genting as the singular Defendant. *See* ECF No. [1]. By April 2025, the Parties alerted the Court to their disagreement regarding the language for a proposed protective order. *See* ECF No. [59]. At the discovery hearing, the Parties informed the Court that, despite Plaintiff's requests, Genting had produced no responsive documents and that Genting was withholding all production until the issuance of a protective order. *See* ECF No. [68] at 1-2. On May 12, 2025, the Court entered the Protective Order explaining that "Defendant's suggestion [at the hearing] that all — or the majority

of — responsive documents will likely be designated confidential raises the specter of overdesignation." *See id*. at 2. The remainder of the Protective Order crafts a tailored sealing procedure designed to discourage overly broad confidentiality designations and to ensure that confidentiality designations do not become a *de facto* sealing mechanism once documents move from private discovery into the judicial record. *See id*. Specifically, paragraph 7 of the Protective Order aims to prevent the burden of establishing good cause for sealing from being "misplaced." *See id*. at ¶7. Paragraph 7 does this by: (1) requiring the filing party to give the designating party seven (7) days notice of what will be filed, so the designating party has a fair opportunity to seek protection; (2) requiring the designating party, if it wants documents to be filed under seal, to petition the Court promptly and justify sealing with specificity; and (3) *expressly encouraging redaction* where feasible (*i.e.*, when the confidential portions are not needed for the filing's purpose), so the public record remains as open as possible while still safeguarding truly sensitive content. *See id* (emphasis added).

### A. First Amended Complaint and First Motion to Seal

On July 1, 2025, the Court dismissed the Complaint with leave to amend to add BBE as a defendant ("BBE" collectively with Genting, "Defendants"). *See* ECF No. [77]. On July 29, 2025, Plaintiff filed the First Motion to Seal requesting that Exhibits 47-48, 50-58, and 60-79 to its forthcoming First Amended Complaint ("FAC") be filed under seal based on Genting's confidentiality designations and the Protective Order. *See* ECF No. [86] at ¶¶1, 5. The next day, Plaintiff filed its First Amended Complaint ("FAC") with minimal redactions to the body and filed Exhibits 47-48, 50-58, and 60-79 fully redacted. *See* ECF No. [89]. On August 11, 2025, Genting responded to Plaintiff's First Motion to Seal ("Genting's Response") arguing that Plaintiff failed to comply with the Protective Order's seven-day notice period and requesting the Court enter an

order requiring Exhibits 47-48, 51-55, 61-63, 66-71, and 74-79 of the FAC (the "FAC Disputed Exhibits") to be filed under seal.  *See* ECF No. [98] at 1-2, 17.  Genting agreed to de-designate Exhibits 50, 56-60, 64-65, and 72-73.  *See id*. at 9-10.  For the remaining exhibits, Genting provides an exhibit-by-exhibit chart that characterizes many of the exhibits as internal emails among Genting intercompany personnel discussing: (i) intercompany financial allocations and expense allocations including internal-system screenshots and discussions of preliminary, unaudited financials; (ii) BBE financial performance, such as gaming revenue and other historical results; (iii) auditor-facing issues and auditor information requests; and (iv) sale and valuation-related analyses, including potential sale transactions, valuation assessments, and commercially sensitive internal models and allocations used in modeling.  *See id*. at 10-13.  Genting also described several exhibits as internal payment requisition and transfer forms and related emails reflecting intercompany transfers and payments involving non-party individuals and entities.  *See id*. at 12-13.

In its Reply (the "Plaintiff's Reply"), Plaintiff argues that most of the exhibits Genting seeks to keep sealed[1] (Exhibits 47, 61-63, 67, 70-71, and 74-78) should be filed publicly because they go to the merits of the FAC (*i.e.*, they purportedly show inaccurate or inconsistent financial reporting, unexplained allocations, and efforts to justify discrepancies to auditors), and Genting cannot justify sealing by characterizing alleged wrongdoing as "confidential."  *See* ECF No. [107] at 4, 7-11.  Plaintiff also contends sealing Exhibit 66 is improper because the documents were shared with third parties, which Plaintiff says undercuts any claim that the communications are

---

[1] Plaintiff agrees that Exhibits 48, 69, and 79 are confidential and should be filed under seal.  *See* ECF No. [107] at 2.  The Eleventh Circuit rejects parties' agreements to seal a document as a sufficient basis for public nondisclosure.  *See Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) (stating it is "immaterial" whether the parties have agreed to seal the record when determining whether a document should be publicly filed).  Accordingly, the Court will address the undisputed confidential exhibits as disputed for the purpose of this analysis.

"confidential." *See id.* at 8.  Plaintiff further asserts that the information in Exhibits 47, 51-55, 68, and 71 is already publicly available.  *See id.* at 5-7.  And finally, Plaintiff argues that Genting fails to explain how disclosure of Exhibit 68 would harm Genting as it contains financial information that is six to ten years old.  *See id.* at 9.

### B. Motion for Leave to File Second Amended Complaint and Second Motion to Seal

On September 12, 2025, Genting moved to dismiss the FAC (the "Motion to Dismiss").  *See* ECF No. [115].  On October 14, 2025, Plaintiff informed Defendants that it intended to seek leave to file a Second Amended Complaint (the "SAC") that would include the exhibits attached to the FAC.  *See* ECF No. [122] at ¶10.  And on October 22, 2025, Plaintiff filed its Motion to Amend to cure deficiencies and add RICO allegations tied to the Nevada Gaming Control Board's complaint against multiple Genting affiliates involving Mathew Bowyer ("Bowyer"), who recently pled guilty to federal offenses, including money laundering.  *See* ECF No. [125] at 1-2.  The SAC includes ten new exhibits — Exhibits 45, 46, and 80-87.  *See* ECF No. [127] at 1-2.

On October 30, 2025, Genting filed the Second Motion to Seal requesting the Court permit the FAC Disputed Exhibits and five new exhibits to the SAC, Exhibits 81-83 and 85-86, to be filed under seal (the "SAC Disputed Exhibits") and to keep existing redactions in place in the Motion to Amend and SAC.  *See id.* at 2.  Genting incorporates its Response to the First Motion to Seal in the Second Motion to Seal.  *See id.* at 1-2, n.1, n. 2.  Genting argues that Plaintiff failed for a third time to comply with the Protective Order's requirement to provide at least seven days' notice before filing confidential material, only providing Genting an unredacted copy after filing and producing the new exhibits days later.  *See id.* at 2.  Genting contends that the SAC Disputed Exhibits include sensitive, non-public financial information and personally identifying information, such as BBE bank reconciliation statements listing account numbers and transaction

details, a detailed 2018 general ledger with transaction-level casino and hotel financials and third-party identities, an image reflecting a non-party gambler's credit limit, and a board paper discussing proposed write-offs and BBE's financial condition, so public filing would harm legitimate privacy and competitive interests and expose non-parties' personal and/or financial data. *See id*. at 9-11.

Plaintiff opposes the Second Motion to Seal ("Plaintiff's Response") arguing the filings and the FAC and SAC Disputed Exhibits (collectively, the "Disputed Exhibits") contain evidence central to the merits — alleged fraud and RICO conduct — and therefore should be litigated publicly under the strong presumption of access to judicial records. *See* ECF No. [133] at 1-3. Plaintiff contends Genting has not carried its "good cause" burden because it offers only conclusory arguments and no affidavit or concrete showing of competitive or privacy harm, and because many of the "confidential" designations are overbroad, noting Genting marked over 94 percent of its production confidential. *See id*. at 3-4. Plaintiff reiterates its arguments made in its Reply to the First Motion to Seal. *See id*. at 12-16. And Plaintiff specifically agrees that only Exhibits 48, 69, and 79 warrant redactions but only as to salary and individual personal financial details. *See id*. at 4, 21. As to the SAC Disputed Exhibits, Plaintiff asserts that these exhibits should be filed openly because they show intercompany transfers, disputed allocations, communications with auditors and third parties, and transactions tied to Bowyer, a "convicted felon and subject of the widely reported sports betting scandal[,]" and organized-crime-related activity that Plaintiff says are matters of public concern and widely reported. *See id*. at 2–4, 9–11, 16–20.

Plaintiff also disputes Genting's claim that it violated the Protective Order's seven-day notice requirement, arguing Genting had timely notice of the intended filings and, in any event,

lack of seven-day notice is not itself a "violation" because the Protective Order simply shifts who must move to seal depending on timing. *See id*. at 20-21.  Plaintiff asks the Court to grant the Motion only as to Exhibits 48, 69, and 79, deem it moot for exhibits the Parties agree are non-confidential, deny sealing for the Disputed Exhibits (or, at most, permit narrow redactions), and require the Motion to Amend and proposed SAC to be filed without redactions. *See id*. at 21-22.

In the Reply ("Genting's Reply"), Genting reiterates that the Disputed Exhibits contain the type of confidential information courts in this District routinely protect, such as detailed bank records with non-party identifying information, general ledgers and other granular financial documents, and internal business correspondence reflecting sensitive decision-making that could harm the business if disclosed to competitors. *See* ECF No. [135] at 2, 5-6.  Genting contends Plaintiff's opposition does not meaningfully rebut these confidentiality concerns and instead relies on inflammatory, unsupported accusations, while also reneging on prior commitments to protect BBE's confidential information. *See id*. at 2-3.  Genting also disputes Plaintiff's interpretation of the Protective Order's seven-day notice requirement, insisting the order does not create an alternative "fallback" path to sealing under the Local Rules when notice is not given; rather, it requires notice and then obligates the designating party to move to seal within that window. *See id*. at 3-4.  Genting further rejects Plaintiff's claim that it has no competitors in the Bahamas, asserting the sealed materials include competitively sensitive financial performance and discounting information that other casinos in the area could exploit. *See id*. at 5.  Finally, Genting argues Plaintiff understates privacy concerns because the documents include far more than addresses and account numbers — such as names, transaction amounts, dates, and casino/hotel activity of individuals — much of which Genting says has little to no relevance to Plaintiff's theory. *See id*. at 6.

### III.    LEGAL STANDARD

"The common-law right of access 'establish[es] a general presumption that criminal and civil actions should be conducted publicly' and 'includes the right to inspect and copy public records and documents.'"  *F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (quoting *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam)).  "It is 'an essential component of our system of justice" and "is instrumental in securing the integrity of the process.'"  *Id.* (quoting *Chi. Tribune,* 263 F.3d at 1311).  Courts "have discretion to determine which portions of the record should be placed under seal, but [such] discretion is guided by the presumption of public access to judicial documents." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) (alteration added).  Indeed, this District's Local Rules reflect this presumption stating "[u]nless otherwise provided by law, Court rule, or Court order, proceedings in the United States District Court are public and Court filings are matters of public record."  *See* S.D. Fla. L.R. 5.4(a).

"[A] judge's exercise of discretion[, however,] in deciding whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to ... [the] production [of the particular document in question].'"  *Chicago Tribune*, 263 F.3d at 1311 (quoting *Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 598 (1978)) (alterations added); *AbbVie*, 713 F.3d at 62.  "Judges deliberate in private but issue public decisions after public arguments based on public records . . . . Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *Perez-Guerrero*, 717 F.3d at 1235 (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), *abrogation*

*on other grounds recognized by RTP LLC v. ORIX Real Estate Cap., Inc.*, 827 F.3d 689 (7th Cir. 2016)) (alteration in original).

Since the common-law right of access only applies to public or judicial records, courts first determine whether the document may be properly considered a public or judicial record. *See Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1361–62 (11th Cir. 2021); *AbbVie*, 713 F.3d at 62; *Chi. Tribune,* 263 F.3d at 1311. Discovery materials alone are not automatically treated as judicial records for purposes of the common-law right of access; however, once they are filed in support of a substantive motion, they become judicial records subject to that right. *See id*. at 1362. Indeed, "[t]his Circuit has held that 'material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right.'" *Id*. at 1361–62 (quoting *Chi. Tribune,* 263 F.3d at 1311).

If found to be a judicial record, the court then considers the merits if withholding that document from public view. "The test for whether a judicial record can be withheld from the public is a balancing test that weighs 'the competing interests of the parties' to determine whether there is good cause to deny the public the right to access the document." *AbbVie*, 713 F.3d at 62 (quoting *Chi. Tribune,* 263 F.3d at 1312). The Eleventh Circuit has listed several factors to consider, including: whether the records are sought for illegitimate or improper purposes; whether disclosure would promote public understanding of historically significant events or the judicial process more broadly; and whether changed circumstances over time reduce sensitivity or competitive harm, warranting modification or unsealing. *See id*. at 61-62 (quoting *Newman v. Graddick,* 696 F.2d 796, 803 (11th Cir. 1983)). The Eleventh Circuit has also considered other factors including: whether disclosure would impair court functions or the administration of justice;

whether disclosure would invade legitimate privacy interests, trade secrets, proprietary commercial information; the likelihood of injury from disclosure; whether substantial access has already been provided; and whether a less onerous alternative (*e.g.*, targeted redaction) can protect the interests without full sealing. *See Callahan*, 17 F.4th at 1363; *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

## IV.   ANALYSIS

The Court begins its analysis by determining whether the Disputed Exhibits here are judicial records. The Eleventh Circuit has long held that pleadings and their attachments are treated as "judicial records" subject to the common-law presumption of access. *See Callahan*, 17 F.4th at 1361–62; *AbbVie*, 713 F.3d at 62. Accordingly, the Disputed Exhibits — attached to the FAC and being submitted in connection with Plaintiff's Motion for Leave to Amend the SAC — are judicial records.

Next, the Court must decide, exhibit-by-exhibit, whether "good cause" justifies restricting public access after balancing the competing interests.[2] The Court begins this analysis with the strong presumption that judicial filings are public, and a party seeking to depart from that norm must follow the governing procedures and carry the burden to justify sealing. *See* S.D. Fla. L.R. 5.4(a) (court filings are matters of public record absent law, Court rule, or Court order to the contrary); *Chicago Tribune*, 263 F.3d 1304. The Court, however, balances the presumption of

---

[2] The Court treats the Parties' agreement that certain exhibits need not be sealed as dispositive. Here, the Parties agree that Exhibits 50, 56-60, 64-65, 72, and 73 need not remain confidential; those exhibits therefore will be filed publicly and without sealing. *See* ECF No. [127] at 8; ECF No. [133] at 4. Conversely, the Parties agree that Exhibits 48, 69, and 70 contain individual compensation information and should receive protection on that basis, but Plaintiff contends that sealing in full is not necessary. *See* ECF No. [127] at n.3; ECF No. [133] at 4. As previously noted, however, the Eleventh Circuit rejects agreements to seal a document as a sufficient basis for public nondisclosure. *See Brown*, 960 F.2d at 1016 (stating it is "immaterial" whether the parties have agreed to seal the record when determining whether a document should be publicly filed). As noted above, the Court will address the undisputed confidential exhibits as disputed for the purpose of this analysis.

access against the countervailing interests in confidentiality, with careful attention to the "nature and character of the information" at issue. *See Chicago Tribune*, 263 F.3d 1304; *Romero*, 480 F.3d at 1246. In performing that balancing, courts consider, among other factors, whether disclosure would harm legitimate privacy interests, the degree and likelihood of injury if made public, and whether a less onerous alternative to sealing (such as targeted redactions) is available. *See Romero*, 480 F.3d at 1246 (citing *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir. 1987)). "A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." *Id*. (citing *Nixon,* 435 U.S. at 598).

For the reasons explained below, the Court finds that Genting has failed to satisfy its burden to show that any of the Disputed Exhibits should be sealed in full and instead adopts a uniform redaction protocol applicable across the disputed exhibits, which streamlines the analysis and ensures narrow tailoring. Under Eleventh Circuit precedent, the Court must balance the public's right of access against legitimate privacy or proprietary interests and must consider "the availability of a less onerous alternative to sealing," most commonly by way of targeted redaction. *See Romero*, 480 F.3d at 1246 (citing *In re Alexander Grant*, 820 F.2d at 356). Thus, prior to filing, Plaintiff shall redact the information contained within the Disputed Exhibits as follows: (1) names of non-party individuals and non-party entities and other personal identifiers, such as addresses; (2) financial amounts reflected in transaction-level entries reflecting BBE and/or non-party transactions (including amounts paid, received, owed, or written off); and (3) bank account numbers and similar financial identifiers reflected in the transaction records.[3] If, after applying the redactions required by this Order, an exhibit would be rendered substantially unintelligible or

---

[3] The Court is optimistic that, with this guidance, the Parties will meaningfully meet and confer in the future regarding any other documents designated as Confidential that require filing with the Court to avoid using scarce judicial resources to resolve a dispute over whether documents should be filed under seal, de-designated, or simply redacted.

the redactions would obscure nearly all substantive content, Plaintiff may instead file the exhibit under seal in its entirety.  In that event, Plaintiff shall file a publicly available placeholder identifying the exhibit, the basis for sealing and explaining why redaction is not practicable, and (if feasible) a summary of the non-sensitive portions of the exhibit.

Turning now to each individual exhibit, the Parties' briefing frames two recurring themes: (1) Non-Party Financial Information and (2) BBE's Proprietary Information. The Court will address each in turn.

### A. Non-Party Financial, Private, and/or Proprietary Information

Here, many Disputed Exhibits reflect transaction-level information involving non-parties, including non-party individuals, businesses, and Genting-related entities, and the disclosure of their financial information without consent presents heightened privacy and confidentiality concerns.  Courts in this District have held that where sensitive information pertains to non-parties who are not public figures, the balancing of interests in favor of protecting the privacy of the non-parties and against uninhibited access to the records is strengthened."  *See Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000); *Houston Specialty Ins. Co. v. Fenstersheib*, No. 20-CV-60091, 2022 WL 190050, at *3 (S.D. Fla. Jan. 21, 2022), *report and recommendation adopted*, No. 20-CV-60091, 2022 WL 484858 (S.D. Fla. Feb. 16, 2022).  For example, a court in this District held that the parties' agreed-upon limited redactions — showing only a customer's first initial and last name and redacting the listed addresses — were sufficient to address the defendants' privacy concerns while still permitting the plaintiff to challenge the defense's merits. *See Echevarria v. Expedia Group, Inc.*, No. 19-CV-22620, 2024 WL 3969198, at *3 (S.D. Fla. Aug. 28, 2024).  The Court also notes that the non-parties' identities and specific transaction amounts are not necessary at this juncture to permit Plaintiff to litigate the operative allegations based on these exhibits.  *See*

*Ready2Go Aviation LLC v. Galistair Trading Ltd.*, No. 23-CV-23318, 2023 WL 7545327, at \*2 (S.D. Fla. Nov. 14, 2023).

As further explained below, the Court finds that narrow redactions would protect the sensitive identifying information at issue while preserving the exhibits' usefulness for the Parties' competing merits arguments and would, therefore, adequately address both sides' concerns. Accordingly, the Court finds good cause to shield only: (1) names of non-party individuals and non-party entities and other personal identifiers like addresses; (2) financial amounts reflected in transaction-level entries reflecting BBE and/or non-party transactions (including amounts paid, received, owed, or written off); and (3) bank account numbers and similar financial identifiers reflected in the transaction records. *See Rossbach*, 128 F. Supp. 2d at 1352; *Houston*, 2022 WL 190050, at \*3; *Echevarria*, 2024 WL 3969198, at \*3. The Court explains its rationale as to each Exhibit below.

### i. *Non-Party Individuals' Personal and Financial Information (Exhibits 48, 69, 79, 81-83, 85-86)*

Genting seeks protection for documents that implicate third-party personal financial privacy, including individual compensation, personal credit limits, and individual debtor information — materials that, even when relevant to the parties' disputes, contain sensitive personal financial information about non-parties or individuals. As previously stated, the Parties agree that Exhibits 48, 69, and 79 contain individual compensation information and should receive protection on that basis; although Plaintiff contends that sealing in full is not necessary. *See* ECF No. [127] at n.3; ECF No. [133] at 4. Because these exhibits are, by the Parties' description, fundamentally personal compensation records, the privacy interest is substantial, and the public value of the individuals' identities and granular amounts is minimal for this case's particular claims and at the pleading stage. *See Rossbach*, 128 F. Supp. 2d at 1352; *Ready2Go*, 2023 WL 7545327,

at *2 (giving particular weight to the fact that the information does not appear central to plaintiff's claims).

Genting describes Exhibits 81 and 82 as bank reconciliation statements for BBE as of December 2017 and June 2017, respectively. *See* ECF No. [127] at 9-10. Genting states that Exhibits 81 and 82 include BBE's bank account number and line-item transfers, payments, and purchases and identifying information for non-party individuals reflected in the transactions, *i.e.*, names, bank account information and personal addresses. *See id*. Plaintiff responds that Exhibits 81 and 82 are spreadsheets with four of five tabs containing only debit and credit amounts and dates with no transaction descriptions, personal identifiers, or competitively sensitive details. *See* ECF No. [133] at 16-17. Plaintiff argues that the final "winnings" tab does name individuals paid for casino winnings or airfare, but Plaintiff argues that the "winnings" tab should not be treated as confidential because casino patrons may observe wins on the casino floor. *See id*. The Court does not find that argument persuasive. *See id*. Even assuming that a win may be publicly observable *within the casino*, Plaintiff identifies no basis to conclude that BBE publicizes or disseminates these individuals' specific identities and specific payment amounts beyond the fact that casino patrons may observe another unknown casino patron win money on the casino floor. To the extent Exhibits 81 and 82 contain non-party transactional information, the Court concludes that such information would not be publicly available. With that said, Genting has not shown why full sealing is necessary and why redaction of the names of such non-parties as well as their bank account and address information would not suffice to ensure their privacy.

Similarly, Genting describes Exhibit 83 as a detailed 2018 general ledger reflecting transaction-level casino and hotel payments involving non-party individuals, including names and personal bank identifiers. *See* ECF No. [127] at 10. Plaintiff reiterates its arguments for Exhibits

81 and 82, stating that casino winnings are public information.  *See id*. at 17.  The same ruling made for Exhibits 81 and 82 applies here.  Accordingly, Exhibits 81-83 shall be filed in accordance with the threshold redaction ruling for the Disputed Exhibits.

Genting describes Exhibit 85 as an image detailing Bowyer's credit limit.  *See* ECF No. [127] at 11.  Plaintiff responds that the core Bowyer-related financial facts Genting invokes are already in the public domain.  *See* ECF No. [133] at 2, 19.  In support, Plaintiff submits a publicly filed Nevada Gaming Control Board complaint that recounts, *inter alia*, that Bowyer submitted a credit application that was later converted to a $1 million front-money application, and it further details Bowyer's gaming activity and losses in dollar terms and notes contemporaneous media reporting about Bowyer.  *See* ECF No. [133-1].  The Court agrees with Plaintiff.  Information that is already public cannot be retroactively cloaked in confidentiality simply because it was produced in discovery; the Protective Order expressly rejects retroactive confidentiality for publicly available information, and Eleventh Circuit authority likewise cautions against sealing material that is already public or that would cause no harm if disclosed.  *See OJ Commerce*, 34 F.4th at 1246–47; *Synchrony Bank v. Cabinets to Go, LLC*, No. 21-CV-21828-KMM, 2022 WL 19300397, at *2 (S.D. Fla. Apr. 13, 2022) (allowing redacted versions publicly where portions were already disclosed, with unredacted portions under seal).  That public disclosure materially reduces the privacy interest in keeping the existence and general magnitude of Bowyer's casino credit and front-money status from the public record in this case.  At the same time, the Court recognizes that Exhibit 85 — as an image drawn from casino credit materials — may contain personal identifiers or account-related details (or other nonpublic personal financial particulars) that are not reflected in the publicly filed Nevada complaint.  Nevertheless, Genting failed to meet its burden to show good cause that the entire document must be sealed.  Accordingly, the Court finds good cause to

protect Exhibit 85 only to the extent it contains account or bank information or other personal identifiers, and the Court will not maintain Exhibit 85 under seal merely because it references Bowyer and a credit limit, which is already public information.  Exhibit 85 shall be filed in accordance with the threshold redaction ruling for the Disputed Exhibits.

Genting describes Exhibit 86 as a board paper about proposed write-offs of uncollectible debt, containing information about BBE's financial condition and the names of non-party individuals owing money to BBE.  *See* ECF No. [127] at 11.  As previously stated with Exhibits 81-83, because the information concerns non-parties who are not public figures, the privacy interest is heightened.  *See Rossbach*, 128 F. Supp. 2d at 1352.  Exhibit 86 shall, therefore, be filed in accordance with the threshold redaction ruling for the exhibits.

### ii.    *Non-Party Business' Proprietary Information (Exhibits 51-55, 62, 68, 70, 74-78)*

For Exhibits 51–55, 62, 68, 70, and 74–78, Genting asserts that the materials contain nonparty entities' sensitive, non-public financial information, including intercompany allocations, transfers, or payment requisitions involving non-parties.  *See* ECF No. [98] at 10-13.  For Exhibits 51–55 and 68, Genting's descriptions identify intercompany allocation discussions, resolutions, internal financial screenshots, and allocation charts involving non-party entities.  *See id*. at 10-11, 12.  Exhibit 62, which Genting describes as auditor-related communications that purportedly include descriptions of internal processes of non-party Genting Malaysia, presents a similar issue.  *See id*. at 11-12.  Genting describes Exhibit 70 as a valuation of preferred shares in BBIH, which Genting also characterizes as a non-party. *See id*. at 12.  Finally, Exhibits 74–78[4] are payment

---

[4] The Parties do not clearly identify whether Exhibits 74–78 reflect BBE's own internal proprietary information or instead consist primarily of non-party payment documentation and intercompany materials attributable to other non-party entities.  Because that threshold issue is not developed in the briefing, the Court does not treat Exhibits 74–78 in the section addressing BBE's proprietary information, and instead

requisition forms and related emails reflecting intercompany expenses and transfers involving non-party entities. *See id*. at 12-13. As previously stated, Exhibits 51-55, 62, 68, 70, and 74-78 concern non-parties who are not public figures, which heightens the privacy interest. *See Rossbach*, 128 F. Supp. 2d at 1352. Therefore, Exhibits 51-55, 62, 68, 70, and 74-78 may be filed in accordance with the threshold redaction ruling for the exhibits.

### B.  BBE's Proprietary Financial Information (Exhibits 47, 51-55, 61-63, 66-68, 70-71, 79, 81-83, 85-86)

For Exhibits 47, 51-55, 61-63, 66-68, 70-71, 79, 81-83, and 85-86, Genting argues that these exhibits present potential competitive harm because they reflect nonpublic internal financial strategy and decision-making — particularly valuation and sales analysis, internal models, and budgets — where the asserted sensitivity is not limited to identifiers, but rather to the substance of the financial analysis itself. *See* ECF No. [127] at 9-12. Courts in this District will seal or restrict access to truly proprietary commercial and financial strategy (*e.g.*, pricing, negotiated terms, internal financials, strategic planning) when a party shows disclosure would give competitors an unfair advantage — particularly at early stages when the public can understand the dispute without specific figures. *See Ready2Go*, 2023 WL 7545327, at *2 (good cause at the dismissal stage where documents reflect confidential commercial and financial information related to their business operations including pricing process, payment terms and schedules, lease and employee rates; especially because the information does not appear to be central to the plaintiff's claims and disclosure could give competitors unfair advantage); *CRubin, LLC v. Escoriaza*, No. 19-CV-22261, 2020 WL 2542629, at *2 (S.D. Fla. May 19, 2020) (good cause at the summary judgment stage where documents reflect "trade secrets and other confidential information, such as attorney

---

addresses them only under the narrower redaction principles applicable to non-party identifiers and transaction-level details.

correspondence relating to third parties, technical infrastructure, business strategy, commercially sensitive transactional, marketing, technical, research, development, business strategy, and otherwise non-public and proprietary information"). But the remedy is usually targeted redaction, not blanket sealing, unless the exhibit is essentially nothing but sensitive business material. *See Romero*, 480 F.3d at 1246 (considering "the degree of and likelihood of injury" and "availability of a less onerous alternative to sealing").

The burden to demonstrate that sealing is warranted rests with the proponent, requiring that it "'describe the alleged harm it will suffer from any disclosure with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *See PayCargo, LLC v. CargoSprint LLC*, No. 19-CV-22995, 2021 WL 2072446, at *2 (S.D. Fla. May 24, 2021) (quoting *Procaps S.A. v. Patheon Inc.*, No. 12-CV-24356, 2015 WL 4430955, at *6 (S.D. Fla. July 20, 2015)). A protective order or confidentiality designation "does not eliminate a party's burden to show good cause to overcome the common-law right of access if those materials are then used as part of a pre-trial motion requiring judicial resolution of the merits." *See id*. And the court will not seal based on conclusory labels. *See id*.

On the required showing, the Court's analysis is guided by decisions in this District holding that the proponent of confidentiality must do more than label information sensitive or harmful. In *PayCargo*, the court rejected a sealing request where the defendants argued disclosure would cause competitive injury but "provided no basis" for that conclusion. *See Paycargo*, at *3. The court held that "conclusory assertion[s]" of sensitivity and competitive injury "deprive[] the Court of any facts (or evidence)" from which to find good cause. *See id*. Relatedly, in *CRubin*, the court declined to seal merits briefs "in their entirety" on the sole asserted reason that they contain

"confidential and non-public information" absent a "compelling factual or legal basis." *See CRubin*, 2020 WL 2542629, at *2.

In this category, Genting describes Exhibits 47, 71, and 66 as internal correspondence regarding intercompany financial allocations relating to a proposed sale transaction and commercially sensitive information harmful in the event of a sale. *See* ECF No. [98] at 10, 12. Plaintiff explains that 47 and 71 are communications regarding BBE's corporate structure, the related Genting-entity relationships in Bimini, and whether Genting Americas could retain sale proceeds in light of BBE's debt and more intercompany financial information. *See* ECF No. [107] at 5-6. Plaintiff explains that, although the communications reference a term sheet tied to a potential sale of BBE, the term sheet is not attached. *See id*. at 5. Plaintiff next explains that Exhibit 66 is Genting's communications with Spectrum Gaming Capital and Citi Bank, attaching the 2023 Audited Financials for BBE and the RWBB Companies. *See id*. at 8. Plaintiff argues that Exhibits 47, 71, and 66 are publicly available and/or disclosed to third parties. *See id*. As previously stated, information that is already public cannot be retroactively cloaked in confidentiality simply because it was produced in discovery. *See OJ Commerce*, 34 F.4th at 1246–47; *Synchrony Bank*, 2022 WL 19300397, at *2 (allowing redacted versions publicly where portions were already disclosed, with unredacted versions under seal). BBE and Genting's corporate structure is disclosed on the docket. *See* ECF No. [30]; ECF No. [89-2]. Additionally, Genting waived its right to argue that BBE's audited financial statements "for all years" should be filed under seal as Genting "does not oppose the public filing of the 2023 BBE Audited Financial Statements" because Plaintiff already "elected to file all previous years' Audited Financial Statements publicly on the docket[.]" *See* ECF No. [98] at n. 4. That public disclosure materially reduces the privacy interest in keeping the existence of such materials from the public in this case.

19

Genting failed to meet its burden to show good cause that the entire documents must be sealed. Accordingly, Exhibits 47, 66, and 71 shall be filed in accordance with the threshold redaction ruling for the Disputed Exhibits.

For Exhibits 51–55 and 68,[5] Genting's descriptions identify intercompany allocation discussions, resolutions, internal financial screenshots, and allocation charts. *See id.* at 10-11, 12. On this record, Genting has not explained — beyond a generalized sensitivity characterization — why targeted redactions would not sufficiently protect any legitimate proprietary interest or how redacted disclosure would be harmful with the kind of exhibit-specific explanation that *PayCargo* requires (*i.e.*, what competitive or commercial injury is likely to occur and why). That is particularly important at the pleading and amendment stage, where the public has a substantial interest in understanding the evidentiary basis for allegations presented to the Court and where sealing must be narrowly tailored. *See Callahan*, 17 F.4th at 1361–62; *AbbVie*, 713 F.3d at 62. Given that the intercompany transfers are directly at issue in this matter, the Court finds that these narrow redactions would protect the sensitive identifying information at issue while preserving the exhibits' usefulness for the Parties' competing merits arguments. In line with *PayCargo* and *CRubin*, the Court finds full sealing is not justified for these exhibits, but narrowly targeted

---

[5] The Court notes that Exhibits 51-55 and 68 are all more than five years old. That age matters. Courts applying the good-cause framework recognize that, as time passes, commercial and financial information may cease to be competitively sensitive, reducing the likelihood of the "serious injury" needed to justify sealing. The Eleventh Circuit in *AbbVie* expressly notes that depending on the particular circumstances of a case, "the passage of time [may] reduce[] the likelihood" of competitive injury enough to shift the balance such that public access exceeds the value of confidentiality. *See AbbVie*, 713 F.3d at 69. And in this District, the court in *Echevarria* explained that even where pricing and revenue information could be sensitive in the abstract, information over four years old "is just too old to create a competitive disadvantage," emphasizing that older financial information does not retain the same level of sensitivity. *Echevarria*, 2024 WL 3969198, at *2. The Court, therefore, factors this temporal issue into its balancing of interest.

redactions are.  Accordingly, Exhibits 51-55 and 68 shall be filed in accordance with the threshold redaction ruling for the exhibits.

According to Genting, Exhibit 61[6] involves "BBE's gaming revenue and historical financial results not made public."  *See* ECF No. [98] at 11.  Plaintiff responds that Exhibit 61 consists of communications discussing "how to explain inaccurate financial information provided to auditors."  *See* ECF No. [133] at 13.  Plaintiff argues this information supports the allegations in this case and shows that Genting "was actively concealing financial information from BBE's auditors."  *See id*. at 14.  The Court agrees with Plaintiff's rationale for not sealing the document.  While internal discussions regarding financials may be proprietary, Genting has not explained — beyond a generalized sensitivity characterization — why public filing with targeted redactions would not sufficiently protect any legitimate proprietary interest.  Because the intercompany transfers are directly at issue in this matter, the Court finds that these narrow redactions would protect the sensitive identifying information at issue while preserving the exhibits' usefulness for the Parties' competing merits arguments.  Consistent with its ruling above and *PayCargo* and *CRubin*, the Court finds full sealing is not justified for this exhibit; instead, it will require narrowly tailored redactions.  Accordingly, Exhibit 61 shall be filed in accordance with the threshold redaction ruling for the exhibits.

Genting describes Exhibit 62 as auditor-related communications regarding BBE's financials and a description of internal financial process of non-party Genting Malaysia.  *See* ECF No. [98] at 11-12.  Plaintiff responds that Exhibit 62 consists of communications whereby

---

[6] The Court notes that Exhibits 61 and 62 are almost four years old.  *See AbbVie*, 713 F.3d at 69 (noting that depending on the particular circumstances of a case, "the passage of time [may] reduce[] the likelihood" of competitive injury enough to shift the balance such that public access exceeds the value of confidentiality); *Echevarria*, 2024 WL 3969198, at *2 (finding that information over four years old "is just too old to create a competitive disadvantage," emphasizing that older financial information does not retain the same level of sensitivity).  The Court again factors this temporal issue into its balancing of interest.

Genting's personnel "attempts to explain several financial discrepancies discovered by BBE's auditors, including why the forecasts varied significantly from the actual results." *See* ECF No. [133] at 14.  Again, while internal discussions regarding financials may be proprietary, Genting has not explained — beyond a generalized sensitivity characterization — why public filing with targeted redactions would not sufficiently protect any legitimate proprietary interest.  Consistent with its prior rulings, the Court finds that narrow redactions strike the right balance of protecting the sensitive information at issue while preserving the exhibits' usefulness for the Parties' competing merits arguments.  Accordingly, Exhibit 62 shall be filed in accordance with the threshold redaction ruling for the exhibits.

Genting describes Exhibit 63 as communications regarding BBE's 2023 budget containing detailed nonpublic financial information.  *See* ECF No. [98] at 12.  Plaintiff responds that Exhibit 63 are communications whereby Genting's personnel attach "BBE financials showing adjusted EBITDA for 2019-2023" and "[t]he 2022 Net Revenues on those financials were higher than those reflected in BBE 2022 Audited Financials."  *See* ECF No. [133] at 14.  Plaintiff argues this information supports the FAC and SAC's allegations and "shows inaccuracies in BBE's financials."  *See id*.  Again, Genting, as the proponent that must establish good cause for sealing, offers only generalized assertions of sensitivity and does not explain why redactions of non-party identifiers and line-item amounts would be insufficient.  Given that the intercompany transfers and financial accuracy issues are central to the pleadings, targeted redactions adequately protect any legitimate proprietary interest while preserving public access to the merits.  Accordingly, Exhibit 63 shall be filed in accordance with the threshold redaction ruling for the exhibits.

Genting describes Exhibit 67 as communications comparing BBE's "internal models" and "allocations to financial statements based on modeling."  *See* ECF No. [98] at 12.  Plaintiff explains

that Exhibit 67 are Genting personnel communications explaining "that their files contain different sets of financials, and that their internal Profit-and-Loss Statements contain variances from BBE's Audited Financials. Genting []explained that it uses BBE's Audited Financials because that is what [Plaintiff] had." *See* ECF No. [133] at 14. Plaintiff argues this information supports the FAC and SAC's allegations and "shows inaccuracies in BBE's financials, and Genting America's efforts to conceal same." *See id*. This exhibit is similar to Exhibit 63 in that it purportedly shows financial inaccuracies. Also similar to Exhibit 63's analysis, the Court finds that Genting fails to show why narrow redactions are insufficient and how this information would cause harm. Accordingly, Exhibit 67 shall be filed in accordance with the threshold redaction ruling for the exhibits.

Next, Genting describes Exhibit 70 as communications discussing the valuation of preferred shares in BBIH. *See* ECF No. [98] at 12. Plaintiff describes Exhibit 70 as containing information about the valuation of BBIH's shares, "deadlines to conduct an impairment assessment of Bimini" and "a snapshot of money flowing in and out of BBE, the snapshot contains the date of the transfer, the amounts, and the entity transferring money in and out of BBE." *See* ECF No. [107] at 10; ECF No. [133] at 15. Plaintiff argues that this exhibit shows "money being taken out of BBE and into BSO or to BBIH is germane to showing dissipation of BBE's assets." *See id*. *See id*. As this information is central to Plaintiff's claims and Genting fails to sufficiently address why filing under a full seal is necessary to protect its privacy interest, Exhibit 70 shall be filed in accordance with the threshold redaction ruling for the exhibits.

Turning to Exhibit 79, Genting describes it as communications discussing a "2023 bonus accrual worksheet which demonstrates individual compensation information." *See* ECF No. [98] at 13. Plaintiff does not dispute the description or the confidential nature of Exhibit 79 but argues that full sealing is unnecessary and narrow redactions of individuals' identities and salary

information.  *See* ECF No. [107] at 2.  Genting fails to argue that this information has any other privacy implications other than non-party individual privacy concerns.  Accordingly, Exhibit 79 shall be filed in accordance with the threshold redaction ruling for the exhibits.

As previously discussed, Exhibits 81 and 82 are 2017 bank reconciliation spreadsheets for BBE containing line-item transfers, payments, and purchases of debit and credit amounts while Exhibit 83 is a detailed 2018 general ledger reflecting transaction-level casino and hotel payments involving non-party individuals, including names and personal bank identifiers.[7]  *See* ECF No. [127] at 9-10; ECF No. [133] at 16-17.  In addition to seeking to file these Exhibits under seal because they involve information belonging to non-parties, Genting also seeks to file them under seal as their own proprietary information.  Plaintiff responds that Exhibits 81 and 82 disclose no transaction descriptions, personal identifiers, or competitively sensitive details.  *See* ECF No. [133] at 16-17.  Plaintiff also argues that the casino "winnings" are public information.  *See id*.  For the reasons stated in Section A.i *supra*, the Court does not find persuasive Plaintiff's argument that the information contained within these exhibits are publicly available and the exhibits should, therefore, be publicly filed.  *See id*.  With that said, Genting has not explained, beyond generalized and conclusory statements, how redacted disclosures would be harmful with the kind of exhibit-specific explanation that *PayCargo* requires (*i.e.*, what competitive or commercial injury is likely to occur and why) or why targeted redactions would not sufficiently protect any legitimate proprietary interest.  Consistent with the Court's ruling above, Exhibits 81-83 will be subject to the threshold redactions requirements prior to filing.

---

[7] The Court notes that Exhibits 81 and 82 are at least eight years old and Exhibit 83 is about six years old. As explained in the preceding footnotes, the Court factors this temporal issue into its balancing of interest.

As for Exhibit 85, which Genting describes as an image detailing Bowyer's credit limit, Genting seeks to maintain the document under seal because it involves non-parties' information (addressed above) and because it implicates its own financial proprietary information. *See* ECF No. [127] at 11.  For the reasons stated in Section A.i *supra*, the Court finds that the information in Exhibit 85 is already public information.  That public disclosure materially reduces Genting's own privacy interest in keeping the existence and general magnitude of Bowyer's casino credit and front-money status from the public record in this case.  However, because Exhibit 85 may contain other nonpublic financial particulars that are not reflected in the publicly filed Nevada complaint and because Genting failed to meet its burden to show good cause that the entire document must be sealed, Exhibit 85 shall be filed in accordance with the threshold redaction ruling for the exhibits.

Finally, Genting describes Exhibit 86[8] as a board paper about proposed write-offs of uncollectible debt, containing information about BBE's financial condition and the names of non-party individuals owing money to BBE.  *See* ECF No. [127] at 11.  Genting also seeks to protect this document from disclosure, citing its own financial proprietary concerns.  Once again, because Genting failed to meet its burden to show good cause that the entire document must be sealed, consistent with its prior ruling, Exhibit 86 shall be filed in accordance with the threshold redaction ruling for the exhibits.

### V. CONCLUSION

Accordingly, the First Motion to Seal, **ECF No. [86]**, is **GRANTED in part and DENIED in part** and the Second Motion to Seal, **ECF No. [127]**, is **GRANTED in part and DENIED in part** as follows:

---

[8] The Court notes that Exhibit 86 is five years old.  As it has done for other exhibits, the Court factors this temporal issue into its balancing of interest.

1. Plaintiff **SHALL** file the exhibits at issue (Exhibits 47-48, 51-55, 61-63, 66-71, 74-79, 81-83, and 85-86) as well as the Motion for Leave and the proposed SAC with the following information redacted:

   (1) names of non-party individuals and non-party entities and other personal identifiers like addresses;

   (2) financial amounts reflected in transaction-level entries reflecting BBE and/or non-party transactions (including amounts paid, received, owed, or written off); and

   (3) bank account numbers and similar financial identifiers reflected in the transaction records.

2. If, after applying the redactions required by this Order, an exhibit would be rendered substantially unintelligible or the redactions would obscure nearly all substantive content, Plaintiff **SHALL** instead file the exhibit under seal in its entirety.  In that event, Plaintiff **SHALL** file a publicly available placeholder identifying the exhibit, the basis for sealing and explaining why redaction is not practicable, and a summary of the non-sensitive portions of the exhibit.

3. The request to file Exhibits 50, 56-60, 64-65, 72, and 73 is **DENIED as moot** as the Parties agree that these exhibits need not be filed under seal.  Accordingly, Plaintiff **SHALL** file these exhibits publicly on the docket.

4. Plaintiff shall comply with the provisions of this Order, making the necessary redactions, and file all Exhibits  **no later than February 5, 2026**.

CASE NO. 24-CV-23874-LENARD/Elfenbein

**DONE and ORDERED** in Chambers in Miami, Florida on January 26, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

27