# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-23874-LENARD/Elfenbein

**RAV BAHAMAS, LTD.,**

      Plaintiff,

v.

**GENTING AMERICAS, INC.,**

      Defendant.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court on: (1) Plaintiff Rav Bahamas, Ltd.'s ("Plaintiff") Motion for Leave to Amend the Complaint, or Alternatively to Amend by Interlineation to Correct Technical Deficiencies (the "Motion to Amend"), ECF No. [125]; (2) Defendant Genting Americas, Inc.'s ("Genting") Motion to Dismiss Plaintiff's Amended Complaint (the "Motion to Dismiss the FAC"), ECF No. [115]; and (3) Defendant BB Entertainment, Ltd. ("BBE") Corrected Motion to File Two Exhibits to the Proposed Second Amended Complaint Under Seal (the "Third Motion to Seal"), ECF No. [138]. The Honorable Joan A. Lenard referred the Motion to Amend and "all related motions and pleadings" to the undersigned "to hear and determine" the issues presented therein. *See* ECF No. [144]. The Third Motion to Seal is "related" to the Motion to Amend as it concerns the sealing of exhibits and redactions submitted in connection with the Motion to Amend. Having reviewed both Motions, the responses thereto, and the record in this case, the Motion to Amend, **ECF No. [125]**, is **GRANTED in part and DENIED in part**, the Motion to Dismiss the FAC, **ECF No. [115]**, is **DENIED as moot**; and the Third Motion to Seal, **ECF No. [138]**, is **GRANTED in part and DENIED in part**.

## I.    INTRODUCTION[1]

This case arises from a joint venture to develop and operate a casino resort in Bimini, Bahamas.  *See* ECF No. [89] at 1-3.  Plaintiff, a Bahamian corporation and major landowner in Bimini, partnered with Defendant Genting Americas, Inc. ("Genting") — a Delaware corporation that operates "Resorts World" branded properties — after Genting "convinced [Plaintiff] that, together, they could build a world-class resort and casino in Bimini, which would yield significant returns for [Plaintiff]."  *See id*. at 2.  Plaintiff contributed the roughly 20 acres on which the resort sits, and the Parties formed BBE to develop, own, and operate what became Resorts World Bimini. *See id*. at 1-2.  Plaintiff alleges the project has been a financial failure with no profit distributions and nearly $1 billion in illegitimate debt caused by Genting's fraudulent accounting and self-dealing.  *See id*. at 2-3.  In Plaintiff's telling, Genting used BBE as a "financial wasteland" to saddle it with improper debt, depressing the value of Plaintiff's shares.  *See id*.

## II.    BACKGROUND

On October 7, 2024, Plaintiff filed the original Complaint naming Genting as the singular Defendant (the "original Complaint").  *See* ECF No. [1].  The original Complaint asserted five state-law tort claims against Genting: fraud (Count I), constructive fraud (Count II), conspiracy to defraud (Count III), tortious interference with an advantageous business relationship (Count IV), and negligence (Count V).  *See generally id*.  Each claim was premised on allegations that Genting caused "illegitimate expenses and debt" to be recorded on BBE's books, thereby increasing BBE's liabilities and diminishing the value of Plaintiff's shares.  *See generally id*.  On November 22,

---

[1] The Court admonishes the Parties for the procedural inefficiencies that have emerged in this litigation. Both Parties' litigation tactics are unnecessarily multiplying these proceedings, resulting in avoidable motion practice.  The Court expects the Parties to litigate with foresight and plan beyond the immediate next step to move this case efficiently toward resolution.  Future filings should reflect thoughtful consideration of how to streamline the proceedings and avoid adding unnecessary complexity to the case.

2024, Genting filed its first Motion to Dismiss (the "Motion to Dismiss the Original Complaint") arguing that BB Investment Holdings, Ltd. ("BBIH") is an indispensable party under Rule 19, and that joining BBIH would destroy diversity jurisdiction. *See* ECF No. [16]. Genting's Reply later shifted the argument to a different indispensable party problem, arguing that the claims as pled were derivative of harm to BBE, so they must be brought as a shareholder-derivative action with BBE joined as a nominal defendant under Rule 23.1. *See* ECF No. [37]. After full briefing, the Court granted Plaintiff leave to file a Sur-Reply, *see* ECF No. [51], wherein Plaintiff argued that its claims are direct because BBE did not suffer a present, concrete injury from the challenged debt allocations and accounting entries (the "Sur-Reply"). *See* ECF No. [56]. Plaintiff contended the "illegitimate debt" placed on BBE's books by other Genting companies was structured so that BBE would not have to repay it during its existence — becoming due only upon liquidation — so the alleged scheme did not harm BBE in an economic sense. *See id*.

On January 13, 2025, the Court entered its Order Adopting Joint Scheduling Report, Setting Pretrial Conference and Trial, Establishing Pretrial Deadlines, and Establishing Pretrial and Trial Procedures (the "Scheduling Order"), setting the deadline to amend pleadings and join parties on May 1, 2025. *See* ECF No. [32] at 2. On July 1, 2025, the Court dismissed the original Complaint with leave to amend to add BBE as a Defendant (the "Dismissal Order"). *See* ECF No. [77]. The Court applied Florida's direct-versus-derivative framework and found that the alleged injury flowed from an initial harm to BBE and was not a "special injury" unique to Plaintiff; accordingly, the claims were derivative and had to be brought on behalf of BBE rather than as direct shareholder claims by Plaintiff. *See id*. The Court further held that because the action must proceed derivatively, BBE is an indispensable party that must be joined, and it granted Plaintiff

leave to amend to reframe the case as a derivative action, join BBE, and address any resulting jurisdictional consequences. *See id*.

On July 30, 2025, Plaintiff filed its First Amended Complaint ("FAC"). *See* ECF No. [89]. A day prior, Plaintiff filed its Amended Motion to File Exhibits to the Amended Complaint Under Seal (the "First Motion to Seal"), requesting permission to file several exhibits to the FAC along with certain redactions made to the text in the FAC under seal. *See* ECF No. [86] at ¶¶1, 5; ECF No. [149-2]. The FAC, styled as a shareholder-derivative action on behalf of BBE against Genting, reframes the case around alleged misconduct that harmed BBE by saddling it with illegitimate liabilities and depriving it of profits. *See* ECF No. [89] at ¶50; ECF No. [149-2] (sealed, unredacted FAC). Factually, the FAC alleges that Genting controlled BBE's finances and operations through overlapping management and affiliated "management" entities, and then used that control to misallocate expenses, salaries, and purported intercompany "loans" onto BBE's books — resulting in hundreds of millions of dollars in allegedly illegitimate debt reflected in BBE's audited financial statements (with liabilities alleged to approach roughly a billion dollars). *See generally id*. It also alleges that Genting restricted access to records, resisted independent audit efforts, and later implemented a "redirection" structure that allegedly recharacterized allocations as loans to obscure ongoing misallocations. *See id*. at ¶¶104-154. On the claims, the FAC pleads the same five state-law counts reframed as derivative claims on behalf of BBE. *See id*. In addition, it asserts the following federal civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"): violation of 18 U.S.C. § 1962(c) for operation or management of a RICO enterprise (Count VI), violation of 18 U.S.C. § 1962(a) for investment of racketeering income (Count VII), and violation of 18 U.S.C. § 1962(d) for conspiracy to violate RICO (Count VIII). *See id*. at 49-54. The alleged predicate racketeering activity includes wire

fraud and money laundering tied to communications and transactions alleged to further the debt-shifting scheme. *See id.* at ¶¶ 167-172.

On September 12, 2025, Genting moved to dismiss the FAC. *See* ECF No. [115]. On October 14, 2025, Plaintiff informed Defendants that it intended to seek leave to file a Second Amended Complaint (the "SAC"), which would include the exhibits attached to the FAC. *See* ECF No. [122] at ¶10. Thereafter, on October 22, 2025, Plaintiff filed its Motion to Amend seeking leave to file the SAC under Rule 15(a)(2). *See* ECF No. [125] at 1-2. Plaintiff contends amendment is warranted to cure the "technical deficiencies" identified in Genting's pending Motion to Dismiss the FAC, ECF No. [115], including issues concerning the joinder or status of BBE in this shareholder derivative action and the omission of certain allegations required by Rule 23.1. *See* ECF No. [125] at 5-7. Plaintiff asserts that, if the Court declines a full amendment, these deficiencies can be corrected through targeted interlineation. *See id.* at 7. Plaintiff further seeks to add or preserve direct claims in the alternative to its derivative claims and to plead additional factual allegations supporting its RICO theories, including the Nevada Gaming Control Board's complaint ("Nevada Gaming complaint") against multiple Genting affiliates involving Mathew Bowyer ("Bowyer"), who recently pled guilty to federal offenses including money laundering. *See id.* at 8-14.

In its Response, Genting argues the Court should deny Plaintiff's Motion to Amend because the amendment deadline has long passed, so Plaintiff must satisfy both Rule 16(b)'s "good cause" standard and Rule 15(a)(2). *See* ECF No. [131] at 5-7. Genting contends Plaintiff satisfies neither due to lack of diligence, undue delay, and repeated failures to cure deficiencies. *See id.* Genting emphasizes that the Court's Dismissal Order gave Plaintiff one opportunity to amend and imposed two clear requirements for a derivative action: (1) join BBE as a nominal defendant; and

(2) comply with Rule 23.1, including the required non-collusion allegations. *See id.* at 8-11. Genting asserts the FAC did not do either, and that Plaintiff waited months — despite being on notice shortly after filing and again during an August 13 discovery conference — to seek another amendment only after facing the Motion to Dismiss the FAC, which it cannot overcome. *See id.* Genting further argues the proposed SAC improperly tries to revive the same direct claims the Court already determined cannot proceed, and that nothing changes the Court's Dismissal Order. *See id.* at 12-16. Finally, Genting attacks Plaintiff's "new" RICO allegations concerning Bowyer and Nevada gaming enforcement matters as late, irrelevant to the core debt-allocation dispute, prejudicial, and futile, asking the Court to deny leave to amend. *See id.* at 16-20.

In its Reply, Plaintiff argues that leave to amend should be granted because good cause exists under Rule 16(b) and amendment is also appropriate under Rule 15(a)(2) given the case's discovery posture and Genting's delays in producing a large volume of documents. *See* ECF No. [132] at 2-4. Plaintiff asserts Genting avoided a meaningful meet-and-confer regarding the purported Rule 23.1 and joinder issues while raising them in a way Plaintiff describes as "gotcha" litigation tactics. *See id.* at 4-6. Plaintiff further maintains it acted diligently because Genting produced key materials supporting the new RICO allegations (including documents tied to Bowyer and multiple alleged transfers from BBE) shortly before or after the FAC was filed. *See id.* at 6-9. Plaintiff also argues Genting will not suffer undue prejudice because discovery has largely focused on the same underlying conduct, no depositions have occurred, deadlines have been extended, and BBE's joinder — which the Court required — effectively resets the posture for an orderly amendment. *See id.* at 10-11.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 15 generally controls amendments to pleadings.  After the period for amendments as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 further instructs that "[t]he court should freely give leave when justice so requires."  *Id*.  Consistent with that directive, the Supreme Court has explained that a plaintiff should be allowed to test its claim on the merits where the underlying facts or circumstances could warrant relief.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Eleventh Circuit has likewise emphasized that there must be a "'substantial reason' for denying a motion to amend," *Bowers v. U.S. Parole Com'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014), and that "unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial," *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).  As *Foman* identifies, the kinds of substantial reasons that can justify denial include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman*, 371 U.S. at 182.

If the request to amend comes after the scheduling-order deadline, the analysis also implicates Rule 16.  Fed. R. Civ. P. 16 (a scheduling order may be modified only "for good cause and with the judge's consent."); *see Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998).  Under that framework, good cause turns on diligence — good cause exists when the deadline could not "be met despite the diligence of the party seeking the extension."  *See Sosa*, 133 F.3d. at 1418 (quoting Fed. R. Civ. P. 16 advisory committee note).  In evaluating diligence, courts consider: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed

to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to the movant; and (3) whether the movant delayed in requesting leave to amend even after acquiring the information. *See id.* at 1419.

If the movant meets Rule 16, the court then assesses amendment under Rule 15(a). *See Sosa*, 133 F.3d. at 1419. "Importantly, once the specified time period for filing motions to amend has passed, the district court has wide discretion to deny a motion for leave to amend." *Kipu Sys., LLC v. Zencharts, LLC*, No. 17-CV-24733, 2019 WL 2288328, at *2 (S.D. Fla. May 29, 2019). Although Rule 15 permits amendment "'when justice so requires,'" it is 'not an automatic right.'" *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (quoting Fed. R. Civ. P. 15(a)) and *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir.1982)). Rather, "in the exercise of its inherent power to manage the conduct of litigation before it, [the court may] deny such leave where there is substantial ground for doing so." *Id.* Consistent with *Reese*, denial may be appropriate based on: (1) undue delay, bad faith, or dilatory motive on the part of the movant, (2) futility of amendment, (3) repeated failure to cure deficiencies by amendments previously allowed, and (4) undue prejudice to the opposing party. *Id.* Ultimately, the Court has "sound discretion" to determine whether to permit amendment, provided it follows Rule 15's requirements. *See Cannon v. Macon Cnty.*, 1 F.3d 1558, 1566 (11th Cir. 1993) (affirming district court's denial of leave to amend second amended complaint).

## IV.    ANALYSIS

Plaintiff seeks leave to amend after the Scheduling Order's amendment deadline and after having already amended once following the Court's July 2025 Dismissal Order, which afforded Plaintiff one opportunity to replead the case in derivative form. *See* ECF No. [77] at 11. Plaintiff's proposed amendments fall into three categories: (1) curing asserted "technical" derivative-

pleading deficiencies by properly addressing BBE's joinder and adding Rule 23.1's non-collusion allegation; (2) reviving the five state-law tort claims as direct claims while pleading derivative theories in the alternative, based on the "illusory intercompany debt" theory and Genting's argument that BBE has not suffered a concrete injury; and (3) expanding the RICO allegations, including adding Bowyer and Nevada Gaming Control Board allegations and related transactions, to bolster concrete loss, pattern, and enterprise.

Because Plaintiff filed the Motion to Amend after the amendment deadline, the Court will begin its analysis of each category by evaluating Rule 16(b) first and proceed to Rule 15(a)(2) only if Plaintiff establishes "good cause" to modify the schedule.  *See* Fed. R. Civ. P. 16; *Sosa*, 133 F.3d at 1418 n.2.  If good cause is shown, the Court then considers whether leave should be granted under Rule 15, which provides that leave should be freely given when justice so requires, while recognizing that denial is appropriate where there is a "substantial reason" to do so, including undue delay, repeated failure to cure deficiencies, undue prejudice, or futility.  Fed. R. Civ. P. 15(a)(2); *Foman*, 371 U.S. at 182; *Bowers*, 760 F.3d at 1185; *Shipner*, 868 F.2d at 407.  Applying that framework, the Court grants the Motion to Amend as to the technical deficiencies but denies it as to the alternatively pled direct claims and the additional RICO allegations.

## A.  The Redacted Filings

But first, as a preliminary housekeeping matter, the Court must address the fact that the Parties have generously redacted portions of the proposed SAC, the Motion to Amend, the Response, and Reply thereto.  On October 30, 2025, Genting filed the Motion to File the Motion for Leave to Amend and Exhibits to the Proposed Second Amended Complaint Under Seal (the "Second Motion to Seal"), asking the Court to allow several exhibits, including five new exhibits to the SAC, to be filed under seal and to keep existing redactions in place in the Motion to Amend

and SAC.  *See* ECF No. [127] at 2.  In an Omnibus Order on the First and Second Motions to Seal, the Court applied the common-law presumption of public access and held that the Parties have not shown good cause for blanket sealing of the exhibits to the FAC and SAC (the "Sealing Order"). *See* ECF No. [147].  Instead, the Court ordered the Parties to file the Motion to Amend, the FAC, the SAC, and the exhibits thereto on the public docket with redactions limited to: (1) names of non-party individuals and non-party entities and other personal identifiers like addresses; (2) financial amounts reflected in transaction-level entries reflecting BBE and/or non-party transactions (including amounts paid, received, owed, or written off); and (3) bank account numbers and similar financial identifiers reflected in the transaction records.  *See id*. at 26.  The Court permits full sealing only as a last resort — where applying the required redactions would render an exhibit largely unintelligible or meaningless — typically coupled with a public placeholder and/or a redacted version if feasible.  *See id*.

Following the issuance of the Sealing Order, the Parties filed the SAC, the Motion to Amend, the Response, and the Reply thereto under seal without any redactions.  *See* ECF Nos. [149], [151], and [152].  Based on the Court's review of these sealed, unredacted documents, it concludes that the Parties have over redacted them in a manner that is inconsistent with the Sealing Order.[2]  Because the central proposed amendment alleges that BBE, with Genting's approval, extended Bowyer a line of credit, made substantial payments to him, and later wrote off his debt, the Court finds that these allegations are core to the requested amendment and to the public's ability to understand the basis for the relief sought.  *See* ECF No. [125] at 2, 13, 14; ECF No. [149-2] at 2, 13, 14; *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) ("Any step that withdraws an element of the judicial process from public view makes the ensuing decision

---

[2] The Court recognizes that the Parties did not have the benefit of the Sealing Order's guidance at the time they filed the redacted versions of the SAC, the Motion to Amend, the Response, and the Reply.

CASE NO. 24-CV-23874-LENARD/Elfenbein

look more like fiat and requires rigorous justification."); *Echevarria v. Expedia Group, Inc.*, No. 19-CV-22620, 2024 WL 3969198, at *3 (S.D. Fla. Aug. 28, 2024). The Court relies on those facts in resolving the Motion to Amend below, and the events described occurred more than four years ago, reducing any claimed sensitivity. *See Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). Moreover, as the Court explained in the Sealing Order, the existence and general magnitude of Bowyer's casino credit has already been placed in the public domain through the publicly filed Nevada Gaming complaint, and information that is already public cannot be retroactively cloaked in confidentiality simply because it was produced in discovery. *See OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 34 F.4th 1237, 1246–47 (11th Cir. 2022); *Synchrony Bank v. Cabinets to Go, LLC*, No. 21-CV-21828-KMM, 2022 WL 19300397, at *2 (S.D. Fla. Apr. 13, 2022). Finally, any remaining legitimate privacy interests can be protected through the less onerous alternative the Court has already required — targeted redactions of personal identifiers of *non-parties* that are not Bowyer and transaction-level dollar amounts — rather than sealing the substantive allegations that bear directly on the Court's analysis. *See Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1363 (11th Cir. 2021); *Romero*, 480 F.3d at 1246.

For these reasons, the Parties shall jointly refile the Motion to Amend, the Response, and the Reply thereto, and the proposed SAC under a single Notice of Filing in which they remove the redactions relating to the substance of the Genting, BBE, and Bowyer relationship or the fact of the alleged line of credit, payments, and write-off. Those materials must be filed on the public docket in a form that allows public review of these allegations. The Parties may only maintain redactions limited to specific dollar amounts, any financial account identifiers or similar personal identifiers required to be protected, but they shall not redact narrative descriptions, dates, or factual

allegations describing the existence and nature of the relationship, the extension of credit, the making of payments, or the write-off decision. The Parties shall file unredacted versions of these filings sufficient to make those allegations publicly reviewable, with redactions confined to the discrete monetary figures and any required identifiers.

**B.  Technical Pleading Deficiencies**

Turning to the merits of the Motion to Amend, the Court begins its analysis by determining whether the technical pleading deficiencies may be corrected through amendment or interlineation. The Court finds Plaintiff has shown sufficient cause to allow a limited corrective amendment. Unlike Plaintiff's proposed substantive expansions addressed below, these requested changes are procedural and compliance-focused — Plaintiff seeks to clarify BBE's status as the nominal defendant in a derivative action and to include Rule 23.1's non-collusion averment. *See* ECF No. [125] at 5-7. Genting persuasively argues that Plaintiff had clear instructions in the Court's Dismissal Order and ample time to include these items earlier, and that Plaintiff already used its one amendment. *See* ECF No. [131] at 8-11. The Court agrees the omissions should have been avoided. But because Rule 16's diligence inquiry is issue-specific and measured against what the particular amendment would change and the burdens it would impose on the schedule, the Court evaluates these narrow, ministerial corrections separately from Plaintiff's later attempts to expand the substantive theories and factual scope of the case. *See Sosa*, 133 F.3d at 1418–19.

### i.   *Rule 16 – Good Cause and Diligence*

Because the request to amend is untimely, Plaintiff must first show good cause under Rule 16(b)(4), which turns on diligence — including whether the movant failed to ascertain the relevant information earlier, whether that information was available, and whether the movant delayed after obtaining it. *See Sosa*, 133 F.3d. at 1418-19. Measured against those factors, Plaintiff's diligence

is mixed at best.  The information needed to cure the asserted defects — BBE's nominal-party posture in a derivative action and Rule 23.1's non-collusion allegation — was available when Plaintiff filed the FAC, and the Court's Dismissal Order placed Plaintiff on notice of derivative pleading requirements.  *See* ECF No. [131] at 8–11.  That weighs against good cause.  Nonetheless, the Court finds Plaintiff has shown sufficient cause to permit a *strictly limited* corrective amendment here because the requested changes are ministerial, do not depend on new merits evidence, and do not alter the operative factual allegations or expand the issues for discovery. Stated differently, this request does not seek to "revise the case" after the deadline; it seeks to conform the pleadings to the derivative framework the Court previously required.

The Court also considers that Genting's current Motion to Dismiss seeks dismissal with prejudice and without further leave to amend.  *See* ECF No. [115] at 37.  Plaintiff moved for leave approximately one month after that motion was filed.  *See* ECF No. [125].  Although prompt filing alone does not establish diligence where the underlying information was previously available, the limited nature of the requested correction — coupled with the absence of any additional, meaningful disruption to the schedule — supports a finding of good cause to allow this narrowly cabined cure rather than require dismissal on procedural grounds that can be corrected without expanding the case.  The Court's finding of good cause is limited to these technical corrections and does not extend to Plaintiff's proposed substantive expansions addressed below.

### ii. *Rule 15 – Undue Delay, Bad Faith, Futility, Recurrent Deficiencies, and Prejudice*

Having found good cause, the Court further concludes Rule 15 favors granting leave for these limited corrections because Genting identifies no meaningful prejudice from permitting the technical cure.   A targeted cure here is unlikely to cause meaningful prejudice because it does not expand discovery into new subject matter; it primarily regularizes the derivative posture the Court

13

already ordered and minimal prejudice weighs in favor of allowing narrow corrective amendments. The Court also credits the proposed corrections as being ministerial and going to compliance with the derivative mechanics the Court has already required.  To the extent Genting argues "repeated failure to cure deficiencies," the Court addresses that concern by limiting the permitted amendment to these derivative-pleading mechanics and by declining to reopen other issues under the guise of a "technical" correction.  *See Foman*, 371 U.S. at 182 (repeated failure to cure may justify denial). The Court therefore **GRANTS** leave to amend the technical amendments.

### C.  Direct Claims

The Court reaches a different result as to Plaintiff's effort to revive the five state-law tort claims as direct claims.  Plaintiff's theory is that Genting has taken inconsistent positions about whether BBE suffered injury.  *See* ECF No. [125] at 10; ECF No. [132] at 4.  Plaintiff argues Genting previously persuaded the Court to find the harm flowed through BBE, requiring derivative amendment, but it now argues that BBE has not suffered a "concrete" injury because the alleged debt is internal, unpaid, or may never be collected.  *See id*.  Plaintiff contends that if BBE is not injured, the "illusory" debt scheme operates to wipe out Plaintiff's equity interest and therefore constitutes a direct shareholder injury, permitting alternative pleading under Rule 8.  *See id*. Plaintiff contends that Genting's Motion to Dismiss the FAC prompted its request to add direct claims, showing Plaintiff acted diligently.  *See id*.

In its Response, Genting argues that the Court already ruled the alleged harm is derivative, that Plaintiff had the opportunity to plead alternative theories in the prior amendment, and that Plaintiff's "illusory debt" framing does not change the fundamental nature of the alleged injury, which remains tied to company-level financial manipulation and diminution in equity value.  *See* ECF No. [131] at 12-16.  The Court agrees with Genting.

As a threshold matter, the Court's Dismissal Order already adjudicated the issue of whether Plaintiff's claims were direct versus derivative and Plaintiff concedes that it previously advanced the same core theory for why its claims should be treated as direct in the Sur-Reply to Genting's Motion to Dismiss the Complaint. *See* ECF No. [125] at 8 ("In its sur-reply RAV explained why it was the *only* victim of Genting's Fraud"); ECF No. [56] at 4-7. In doing so, Plaintiff effectively seeks reconsideration of the Dismissal Order under the guise of seeking leave to amend under the Rule 15 standard rather than the reconsideration standard. The Court declines to reconsider the Dismissal Order without the appropriate briefing and request.

### i.   *Rule 16 – Good Cause and Diligence*

Plaintiff also fails to meet Rule 16's "good cause" standard, which requires a showing that the amendment deadline could not have been met despite the movant's diligence. *See Sosa*, 133 F.3d at 1418-19. Plaintiff's request to revive the direct claims is not driven by newly discovered facts that were unavailable at the time of the original Complaint or the FAC. *See* ECF No. [132] at 4. By contrast, Plaintiff's asserted "new" material is aimed at the RICO theory, rather than any newly discovered facts that Plaintiff claims would independently justify repleading the previously dismissed direct claims. *See id.* at n.6. Plaintiff's "alternative-direct" theory turns on the same core concepts it has relied on from the outset — namely, that the challenged intercompany liabilities are "illusory" and operate to impair Plaintiff's equity interest — and those concepts were available earlier and could have been pled in the original Complaint or, at the latest, in the FAC. Indeed, Plaintiff advanced the substance of this position in its Sur-Reply to the Motion to Dismiss the original Complaint, arguing that BBE purportedly suffers no present harm from the debt structure while Plaintiff is uniquely harmed by the liquidation windfall. *See* ECF No. [56] at 4-7. Having already articulated that theory during the first round of dismissal briefing, Plaintiff cannot

credibly maintain that, despite diligence, it was prevented from timely pleading direct claims in the alternative when it filed the FAC pursuant to the Court's Dismissal Order. *See Sosa*, 133 F.3d at 1418-19 (good cause focuses on diligence and whether the movant delayed after the basis for amendment was known).

Nor does Plaintiff's reliance on Genting's arguments in the Motion to Dismiss the FAC establish Rule 16 diligence. Rule 16 is designed to prevent parties from revising theories in reaction to motion practice when the factual basis for the theory was available earlier. Plaintiff's direct claims rest on facts and concepts that, on this record, were available earlier and could have been pled in the FAC and the original Complaint, and some of which were pled in the original Complaint. Because Plaintiff had the opportunities to plead direct claims, or alternatively seek reconsideration of the Dismissal Order, Plaintiff's failure to include an alternative direct theory in the FAC reflects a strategic choice, not diligence thwarted by circumstances beyond its control. *See Sosa*, 133 F.3d at 1419 (considering whether the information supporting amendment was available earlier and whether the movant delayed in seeking leave after obtaining it). Accordingly, Plaintiff has not carried its burden to show good cause under Rule 16 to reassert direct claims after the deadline.

### ii. *Rule 15 – Undue Delay, Bad Faith, Futility, Recurrent Deficiencies, and Prejudice*

Because Plaintiff has not shown good cause under Rule 16(b)(4), the Court need not reach Rule 15(a)(2); nevertheless, the Court briefly addresses Rule 15 in the alternative for completeness. Under Rule 15, permitting revival of direct claims would also be inappropriate because substantial reasons justify denial. *See Foman*, 371 U.S. at 182. In light of the Court's prior ruling on the direct versus derivative issue and the substance of the alleged injury, the proposed direct claims are, at a minimum, subject to a significant futility concern, and granting leave would risk

relitigating an issue already resolved without a sufficiently changed factual predicate.  *See Reese*, 527 F.3d at 1263 (leave to amend is "not an automatic right" and may be denied where there are substantial grounds for doing so).  The Court therefore **DENIES** leave to amend to reassert the direct claims.

### D.  RICO Allegations

Finally, as to the RICO allegations, Plaintiff seeks to add additional allegations regarding predicate acts under RICO, specifically relating to Bowyer's relationship with Genting and BBE. *See* ECF No. [125] at 12-15.  Plaintiff contends the Bowyer allegations strengthen and clarify its existing RICO theory showing concrete financial loss to BBE through credit, payments, and write-offs to Bowyer, which rebuts Genting's Motion to Dismiss argument, and supports pattern, continuity, and enterprise allegations by tying the conduct to broader anti-money laundering failures and alleged misuse of casinos as conduits for illicit proceeds.  *See* ECF No. [125] at 13, 14; ECF No. [132] at 6-10.  The proposed SAC adds ten new exhibits, Exhibits 45, 46, and 80–87, and new Bowyer-related RICO allegations, which are primarily found in new paragraphs 174-192, 307, 314, 321 and also the additions made to paragraphs 294-301.  *See* ECF No. [125] at n. 1, 12-14; ECF No. [132] at 7-10; ECF No. [149-3] at ¶¶174-192, 294-301, 307, 214, 321.  The Court will first address Rule 16's good cause standard along with the Parties' corresponding arguments and then address the Rule 15 standard and arguments.

### i.  *Rule 16 – Good Cause and Diligence*

As to diligence under Rule 16, Plaintiff's argument is tied to (1) the timing of when it obtained the documents that form the basis for the new Bowyer allegations and (2) the fact that these documents address the RICO pleading-sufficiency dispute raised in Genting's Motion to Dismiss the FAC.  *See* ECF No. [131] at 2, 3, 7-10.  The second argument is easily disposed of.

Under Rule 16, the Court's diligence inquiry does not turn on whether a plaintiff was *prompted* by arguments in a defendant's motion to dismiss.  Rather, the question is whether Plaintiff has shown good cause by demonstrating diligence, *i.e.*, (1) whether Plaintiff failed to ascertain facts prior to filing the pleading or failed to acquire information during discovery; (2) whether the information supporting the proposed amendment was available to Plaintiff; and (3) whether Plaintiff delayed in seeking leave to amend after acquiring the information.  *See Sosa*, 133 F.3d at 1418–19.  Framed by those factors, Plaintiff's assertion that it first encountered Bowyer's name when reviewing Exhibit 81 during a search for additional BBE cash transfers prompted by Genting's "no concrete financial loss" arguments in its Motion to Dismiss the FAC is both irrelevant and unpersuasive. *See* ECF No. [132] at 6-7.

Plaintiff's first argument fairs no better as Plaintiff's showing of temporal diligence as to the new Bowyer-related RICO allegations is, at best, mixed and ultimately weak on this record. On timing, Plaintiff explains, and Genting confirms the timing, that Exhibits 83 and 86 were produced with approximately 31,088 other documents in June 2025, just one month before Plaintiff filed the FAC.  *See id*. at 2; ECF No. [131] at 18 n.5.  Plaintiff also explains that Exhibits 46, 81, 82, and 85 were produced with approximately 42,955 documents in August 2025, after Plaintiff filed the FAC.  *See id*.  Genting does not address Exhibits 46, 81, 82, 85, but Genting explains that *Plaintiff* produced Exhibit 84 in March 2025 and argues that Plaintiff has had this document since 2020, which Plaintiff does not refute.  *See* ECF No. [131] at 17; ECF No. [131-1] at ¶3.  Genting also argues, and Plaintiff does not refute, that it produced 48 documents referencing Bowyer before Plaintiff filed the FAC, which the affidavit from Genting's counsel supports; however, the affidavit does not support the additional argument that these documents included information such as checks

to Bowyer.  *See id.*  Genting, however, does not cite to the specific Bates ranges of these documents to confirm production date.

Here, Plaintiff's showing of diligence is mixed at best and fails to refute Genting's argument identifying pre-existing knowledge and pre-litigation access that undercuts Plaintiff's claim that it lacked a basis to plead Bowyer's involvement earlier.  First, Genting points to evidence that Plaintiff possessed Bowyer-related records years before the FAC through shareholder inspection materials.  *See* ECF No. [131] at 17.  Genting states that Plaintiff had possession of Exhibit 84 since 2020.  *See id.*  Additionally, in the Third Motion to Seal, BBE states Exhibit 84 reflects it was received by Plaintiff in 2020 through shareholder document requests, and BBE further represents that Plaintiff obtained Exhibits 84 and 87 through document requests under the Shareholders' Agreement — not produced by Genting in this litigation.  *See* ECF No. [138] at 2, 5, 6.  Those facts indicate that, at least as to Bowyer's identity and casino credit information and ledger-level transaction data, Plaintiff had access to relevant Bowyer-connected information well before Plaintiff filed the FAC.  *See id.* at 6, 9.  That history undercuts any suggestion that Plaintiff could not have investigated and pled the relationship between Bowyer and BBE earlier with reasonable diligence.

Second, the record suggests that substantial information supporting the proposed Bowyer amendments was "available" to Plaintiff before the FAC, even apart from the post-FAC production that Plaintiff emphasizes.  Plaintiff relies heavily on the timing of certain productions — stating that Exhibits 46, 81, 82, and 85 were produced after the FAC in August 2025, and that Exhibits 83 and 86 were produced in late June 2025, roughly one month before the FAC.  But the fact that some documents were produced near or after the FAC does not establish good cause if the underlying information was available from other sources or earlier materials in Plaintiff's

possession.    Here,  Genting  additionally  asserts,  supported  by  its  counsel's  affidavit,  that  48 documents referencing Bowyer were produced before the FAC was filed, and Plaintiff has not shown — on the current record — that those materials were insufficient to identify the Bowyer-related transactions Plaintiff now pleads.  Likewise, Plaintiff's own reliance on materials obtained before litigation shows that at least some of the substance it now uses to support Bowyer-related allegations was available to Plaintiff independent of late discovery.  In short, while Plaintiff can point to some belatedly-produced documents that may add detail, the record contains substantial indications that the core Bowyer-related facts were available to Plaintiff earlier.

Additionally, Plaintiff's explanation regarding Exhibit 80, the Nevada Gaming complaint, also provides some support for diligence, but only up to a point.  Plaintiff acknowledges it saw the Nevada Gaming complaint before filing the FAC, yet argues it did not plead Bowyer then because "the  regulators,  who  had  investigated  Genting's  dealings  with  Bowyer,  had  not  found  any connection between Bowyer and Genting Americas or BBE," so Plaintiff had no reason to believe one existed.  *See* ECF No. [132] at 7.  That argument carries some intuitive force in the abstract — if a public regulator document does not connect Bowyer to the specific entities at issue, a plaintiff may be reluctant to plead that connection without supporting transaction evidence.  But it does not, by itself, establish diligence unless Plaintiff can also show that: (i) it lacked internal records showing the connection; and (ii) the connection was first revealed by the late-produced discovery material.  In other words, the strength of Plaintiff's Exhibit 80 rationale depends on whether the later-produced exhibits truly supplied a previously missing factual link, as opposed to merely "bolstering" an allegation Plaintiff could have made earlier.  Because Rule 16 diligence is measured by when the relevant information was available to the movant — not by when the movant

chose to deploy it — the absence of a concrete, exhibit-by-exhibit showing that the key Bowyer facts were first obtainable only after the FAC was filed weighs against good cause.[3]

Accordingly, applying the Rule 16 diligence factors, Plaintiff has not shown that the amendment deadline could not have been met despite diligence.  While some Bowyer-related exhibits were produced close in time to the FAC or days after its filing, the record indicates Plaintiff had access to Bowyer-related information through earlier sources, including shareholder inspection materials and pre-FAC production, and Plaintiff has not demonstrated that it could not have ascertained and pled the factual basis for the Bowyer allegations within the deadline and by the time it filed the FAC.

### ii.  *Rule 15 – Undue Delay, Bad Faith, Futility, Recurrent Deficiencies, and Prejudice*

Because Plaintiff has not shown good cause under Rule 16(b)(4), the Court need not reach Rule 15(a)(2); nevertheless, the Court briefly addresses Rule 15 in the alternative for completeness. To recap, Rule 15 directs that leave should be "freely give[n] when justice so requires," but may be denied for substantial reasons such as undue delay, repeated failure to cure deficiencies, undue prejudice, or futility.  *Foman*, 371 U.S. at 182; *Reese*, 527 F.3d at 1263.  Genting's principal Rule 15 objections to the Bowyer additions are relevance, futility, and prejudice.  On relevance and prejudice, Genting characterizes the FAC's RICO theory as "centered on liabilities booked to BBE that supposedly were not incurred by BBE but by other Genting Group entities," *see* ECF No. [131] at 18, whereas the Bowyer material presents a new theory "that BBE wrote off Bowyer's

---

[3] Adding to the lack of diligence here is the fact that Genting produced Exhibits 46, 81, 82, and 85 on either August 4 or August 6, 2025, which was less than one week after Plaintiff filed the FAC.  *See* ECF No. [132] at 2.  Despite having this last batch of exhibits no later than August 6, 2025, Plaintiff still waited ten weeks to file the Motion to Amend, filing it on October 22, 2025.  *See* ECF No. [125].  Even upon Plaintiff's receipt of these additional documents, there is an unexplained delay of more than two months in seeking leave to amend when Plaintiff was aware that the deadline to amend the pleadings had expired months earlier and time was, therefore, of the essence.

debt to BBE resulting in BBE losing" substantial sums, which would broaden the case into anti-money laundering compliance, Nevada operations, regulators, new affiliates, and third-party witnesses, *see* ECF No. [152-1] at 18.  Plaintiff responds that the Bowyer allegations do not replace the core theory but "enrich" the RICO predicate acts and the pattern, continuity, and enterprise allegations, directly addressing Genting's dismissal arguments about the absence of concrete financial loss and insufficient predicate detail.  *See* ECF No. [132] at 11-12; ECF No. [132] at 8-10.  Plaintiff also invokes the Bowyer transactions as "highlighting a corporate culture and strategy that allowed executives, controlling a labyrinth of subsidiaries, to act with impunity and move money around improperly without any qualms about the harms caused. Genting's tactics shreds laws and shareholders (like RAV) alike."  *See* ECF No. [125] at 14.  As to prejudice, Plaintiff argues that there is no undue prejudice because the amendment merely adds detail without changing the case's core issues, discovery is already well underway with no depositions taken and deadlines extended, and Genting's claims of expanded discovery are conclusory and amount only to ordinary litigation expense or delay.  *See* ECF No. [132] at 10-11.  Plaintiff adds that Genting's own pursuit of multiple stays precludes their delay argument, and because BBE is finally joined as requested by Genting, Plaintiff contends the case is effectively "reset," making this an appropriate time to allow amendment without undue prejudice.  *See id*.

The Court agrees with Genting that the Bowyer additions do not fit within, and instead materially depart from, Plaintiff's original RICO theory.  The FAC's RICO narrative is premised on an alleged enterprise scheme to load BBE with liabilities and expenses purportedly incurred by other Genting entities, recharacterize those allocations as intercompany "loans," and conceal the resulting balance-sheet manipulation through audited financial statements and related communications.  *See* ECF No. [149-1] at ¶¶146-162.  The Bowyer allegations, by contrast,

concern an asserted casino-customer relationship — that BBE extended credit to Bowyer, BBE's alleged payments and transfers to Bowyer, and an alleged write-off of Bowyer's uncollectible debt — conduct that, on its face, reflects BBE's day-to-day casino operations and credit practices rather than the alleged intercompany misallocation of affiliate liabilities to BBE's books.  *See* ECF No. [149-3] at ¶¶174–192.  Even accepting Plaintiff's characterization that the Bowyer allegations "enrich[]" the predicate acts and support continuity, the new allegations introduce a distinct set of operative facts, actors, and transactions that are not necessary to prove the alleged "illegitimate debt" scheme and would require proving a separate alleged course of wrongdoing — *i.e.*, the extension of casino credit and handling of gaming customer debt — alongside the intercompany accounting and allocation theory.[4]  *See id.* at ¶¶ 294–301, 307.

Relatedly, the Court finds that allowing these allegations would significantly broaden the scope of discovery and the case overall.  The original Complaint was filed on October 7, 2024, and Plaintiff now seeks to inject a Bowyer narrative almost a year and a half later.  *See* ECF No. [1].  The Bowyer allegations would predictably expand discovery beyond the already complex intercompany allocation and financial-statement issues to encompass, at a minimum, casino credit policies and approvals, anti-money laundering compliance programs and training, communications with regulators, the handling of customer front money and credit limits, the decision-making and documentation surrounding write-offs, and the circumstances of the alleged transfers identified in the general ledger and related exhibits.  *See* ECF No. [149-3] at ¶¶174–192,

---

[4] The Court does not suggest that the alleged BBE–Bowyer relationship, or the alleged payments and write-offs, could never be probative in any respect.  Such facts may bear tangentially on issues like motive, opportunity, or the ability to move funds in ways Plaintiff contends were improper.  But Plaintiff's RICO theory, as pled, is centered on an intercompany "illegitimate debt" scheme — liabilities allegedly booked to BBE that were supposedly incurred by other Genting entities — and the Bowyer allegations are not a central feature of that theory; instead, they introduce a distinct factual track that would materially expand the case.

294–301, 307.  In short, the Bowyer allegations would transform the litigation from a case focused on whether affiliate liabilities were improperly shifted onto BBE's balance sheet into a substantially broader inquiry, thereby imposing "real" prejudice in the form of materially expanded discovery obligations and litigation scope.  In conclusion, the Bowyer-related allegations introduce a new theory and set of facts, creating undue prejudice to Genting and departing from the core theory originally pled, which justifies denying the amendment under Rule 15.[5]  The Court therefore **DENIES** leave to amend to include the new RICO allegations.

## V.    CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The Motion to Amend, **ECF No. [125]**, is **GRANTED in part and DENIED in part**. Plaintiff is granted leave to amend solely to cure the derivative-pleading mechanics relating to BBE's derivative status and the Rule 23.1 non-collusion allegations. The Motion to Amend is otherwise denied.

2. **Within seven (7) days** of the appearance of Plaintiff's new counsel, the Parties **SHALL** file, under a single Notice of Filing, the unredacted versions of the Motion to Amend, the Response, the Reply, and the SAC in compliance with the Sealing Order. *See* ECF No. [147].  Specifically, they **SHALL NOT** redact narrative descriptions,

---

[5] On futility, Genting argues the Bowyer allegations face serious timeliness problems based on the statute of limitations and relation-back and would, therefore, be futile.  *See* ECF No. [131] at 20. Civil RICO claims are subject to a four-year statute of limitations. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013).  Plaintiff resists Genting's limitations and time-bar arguments by asserting — without more — that the proposed amendment is "loaded with facts supporting the tolling of the statute of limitations." *See* ECF No. [132] at 11.  But Plaintiff does not identify the specific tolling facts or cite to specific paragraphs within the 77-page, 325-paragraph proposed SAC; instead, Plaintiff cites the pleadings generally.  *See* ECF No. [132] at 11.  Neither side thoroughly briefed this issue, identified the date the statute of limitations would have run, or otherwise addressed the tolling issues with any level of specificity. The Court will not make arguments for either party and, therefore, declines to make a finding on the matter of futility of amendment on the RICO claims.

dates, or factual allegations describing the existence and nature of the relationship, the extension of credit, the making of payments, or the write-off decision regarding Bowyer.  The Parties may maintain redactions limited to specific dollar amounts, any financial account identifiers, or similar personal non-party identifiers.

3. The Motion to Dismiss the FAC, **ECF No. [115]**, is **DENIED as moot**.

4. The Third Motion to Seal, **ECF No. [138]**, is **DENIED in part and GRANTED in part**.  The Parties **SHALL** file Exhibits 84 and 87 in compliance with the Sealing Order.  *See* ECF No. [147].

5. In light of the recent Order granting Plaintiff's counsel's Motion to Withdraw, ECF No. [154], giving Plaintiff until April 6, 2026 to obtain new counsel and extending all deadlines in the Case Management Order by 45 days, the Court modifies the briefing schedule within its Omnibus Order, ECF No. [126], as follows:

   a. **Within seven (7) days** of the appearance of Plaintiff's new counsel, Plaintiff **SHALL** file its new, Second Amended Complaint making only the adjustments to BBE's Defendant-status and adding the Rule 23.1 allegations.

   b. **Within fifteen (15) days** of Plaintiff filing its Second Amended Complaint, Genting and BBE **SHALL** file their responses thereto.

   c. If Defendants move to dismiss the Second Amended Complaint, Plaintiff **SHALL** file its response, and Defendants **SHALL** file their respective replies in accordance with Local Rule 7.1.

6. The Clerk of Court is **DIRECTED** to **MAIL** a copy of this Order to Plaintiff at its address of record:

Rav Bahamas, Ltd.
8040 SW 69 Avenue

CASE NO. 24-CV-23874-LENARD/Elfenbein

Miami, FL 33143

**DONE and ORDERED** in Chambers in Miami, Florida on February 24, 2026.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

26